## Louisville & Nashville R. R. Co. v. Renfro's Admr.

(Decided March 7, 1911.)

### Appeal from Bell Circuit Court.

1. Carriers—Duty and Liability Under Separate Coach Law.—If the conductor of a passenger train permits a passenger to be or remain in a coach or compartment set apart for passengers of the other race, the company will be liable for any act of misconduct or violence committed by such passenger to the injury of a passenger rightfully occupying the coach or compartment.

2. "Conductor" or "Manager."—The statute imposes upon the conductor or manager of passenger trains the duty of observing its provisions, and the company will not be civilly liable for the failure of brakemen or porters to compel obedience to the statute.

3. Conductor—Duty of.—When a conductor knows or has information that a passenger is in a coach or compartment set apart for passengers of another race, he should as soon as practicable and within a reasonable time remove him.

4. Brakemen and Porters.—It is the duty of brakemen and porters to require passengers to obey the law, but the company will not be civilly liable for their failure to do so if as soon as practicable and within a reasonable time after having notice that the statute is violated they give such information to the conductor.

5. "Conductor" or "Manager."—These words are used interchangeably and mean the person who has charge of the train.

BENJAMIN D. WARFIELD, C. W. METCALF, J. W. ALCORN, for appellant.

W. T. DAVIS, for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

In July, 1908, William Renfro, a colored man, while a passenger on one of appellant's trains, was shot and killed in the compartment set aside for colored passengers, by Carlo Jones, a white man, also a passenger who went from the compartment for white passengers into the compartment for colored passengers. This action was brought by the administrator of Renfro to recover damages for his death, the ground of the action being that the appellant company subjected itself to liability for the death of Renfro by permitting, through its employes, Jones to be and remain in the colored compartment in violation of the statute. Upon a trial before a jury a verdict was returned in favor of the appellee, and it is the judgment on that verdict we are asked to reverse.

The errors complained of are that the trial court erred in the admission and rejection of evidence, in giving and refusing instructions, and in declining at the conclusion of the evidence to direct a verdict in favor of the railroad company.

The facts are substantially as follows: Renfro, Jones and a number of other white and colored passengers, got on the train at Middlesboro in the night. The first passenger coach on the train was divided by a partition, with a door in the aisle, into two compartments—one being set apart for colored passengers, and the other used as a smoking car for white passengers. Renfro and a number of his colored companions and friends took seats in the colored compartment; and Jones and a number of other white persons took seats in the smoker. Shortly after leaving Middlesboro the conductor commenced taking up tickets in the colored compartment, which was at the front of the train, and from there went into the smoker where the white passengers were, and thence into other cars in the rear of the train. It appears from the evidence that as he passed through the colored compartment taking up tickets, there was at least one and probably two white passengers, Jones not being one of them, in this compartment, and that he saw or could have seen them; and was requested by one or more of the colored passengers to make them go into their own compartment, and was also asked to keep the partition door closed, but that he did not give any attention to either of these requests but went on about his

business of collecting tickets. Jones did not go into the colored compartment until after the conductor had passed out of it, and there is no evidence whatever that the conductor or the brakeman on the train knew that Jones had gone into the colored compartment or that he was in there until after the trouble between himself and Renfro. But the colored porter testified that he saw Jones in the colored compartment a few minutes before the shooting occurred that resulted in Renfro's death, but he did not request him to leave it nor did he inform the conductor that he was in the colored compartment.

About six miles from Middlesboro there is a station called Ferndale, and it was here that the train made the first stop after leaving Middlesboro. Some place between Middlesboro and Ferndale, the weight of the evidence conducing to show that it was shortly before the train reached Ferndale, Jones went from the white compartment into the colored compartment and was engaged, for the few minutes that elapsed between the time he entered until the train reached Ferndale, in friendly conversation with an old colored man he had known for many years. This old man left the train at Ferndale, and about the time the train started Jones went to the front end of the colored compartment where Renfro was, and in a moment Renfro and Jones commenced shooting at each other, with the result that Renfro was killed and Jones dangerously but not fatally wounded, although he died from other causes before the trial. What occasioned the difficulty between Jones and Renfro is entirely unexplained. There was no quarrel or disturbance between them preceding the shooting. They were seen engaged in conversation, and Jones was heard to say to Renfro "What did you say anything about that for," and this was the only part of the conversation between them that any of the witnesses who testified heard, but immediately after these words were spoken, the shooting commenced. Renfro who was a man of bad reputation had been drinking, but to what extent he was intoxicated is not shown. Jones was perfectly sober, and except for the difficulty with Renfro, he did not do or say anything that did or would have caused the slightest disturbance. Nor is there any evidence that the other white men who were in the colored compartment created any disorder or attempted in any manner to insult, abuse or harm any of the colored passengers. Indeed, although

several of the white as well as colored passengers were drinking, and in a more or less degree under the influence of liquor, there was no disorder or quarrel or excitement on the train, except between Jones and Renfro.

Under these facts the first question to be disposed of is: Should the request for a peremptory instruction have been granted?

Section 795, of the Kentucky Statutes, reads in part:

"Any railroad company or corporation, person or persons, running or otherwise operating railroad cars or coaches, by steam or otherwise, on any railroad line or track within this State, * * * are hereby required to furnish separate coaches or cars for the travel or transportation of the white and colored passengers on their respective lines of railroad. Each compartment of a coach divided by a good and substantial wooden partition, with a door therein, shall be deemed a separate coach within the meaning of this act. * * *"

Section 797 reads in part:

"That any railroad company or companies that shall fail, refuse, or neglect to comply with the provisions of sections 795 and 796, shall be deemed guilty of a misdemeanor. * * *"

And section 799 provides:

"The conductors or managers on all railroads shall have power, and are hereby required, to assign to each white or colored passenger his or her respective car or coach or compartment, and should any passenger refuse to occupy the car, coach or compartment to which he or she may be assigned by the conductor or manager, said conductor or manager shall have the right to refuse to carry such passenger on his train, and may put such passenger off the train. * * *"

And section 800, reading:

"That any conductor or manager on any railroad who shall fail or refuse to carry out the provisions of section 799, shall, upon conviction, be fined * * *."

It will be noticed that under this statute railroad companies are required to provide separate compartments or coaches for white and colored passengers, and that the conductors or managers of trains are required to assign white and colored passengers to the respective cars or compartments set apart for their use, and to compel them upon pain of ejection from the train to occupy such cars or compartments. There is no complaint that the rail-

road company did not provide compartments in accordance with the statute, and so this part of the statute need not be further noticed. But, under this statute if the conductor or manager of a train permits white or colored passengers to be or remain in a coach or compartment set apart for the other race, after he knows or has information they are in such coach or compartment, the company will be liable in damages if any passenger rightfully occupying his coach or compartment is humiliated, insulted, injured or killed by a passenger who is permitted to remain in a coach or compartment set apart for use and occupancy of the race of which he is not a member. The duties and liabilities of railroad companies in this respect were considered by this court in Quinn v. L. & N. R. R. Co., 98 Ky., 231. In that case Fannie Quinn, a colored woman, brought suit against the company, charging that with the consent of the conductor white passengers were permitted to enter and remain in the car set apart for colored people in which she was riding, and while in the car used violent, profane, abusive and indecent language in her hearing, and otherwise humiliated and disturbed her. The evidence showed that the conductor knew the white men were in the car, but did not as directed by the statute compel them to go and remain in another car. On these facts the court said:

"While the mere presence of the intruder into this coach for colored persons, with the knowledge of the conductor, would not give to the occupants a cause of action against the corporation, we cannot concur with counsel or the court below that the separate coach law has no application to the facts of this case. It is not necessary, in order to permit a recovery, to show that the conductor knew of this bad treatment of the colored passenger, or from his condition had the right to anticipate it was the purpose of the intruder to produce trouble. He should not be allowed to enter the car, or to remain there after his presence is discovered. * * * If, as we shall assume the case, each one of the passengers had been assigned the coach required by the statute, and the white passenger had left his coach and gone into the coach with these colored people without the knowledge of the conductor while he was attending to his duties in the other cars, and had there abused and insulted the appellant, it is plain no action could be main-

tained against the company, but when the white passenger is assigned to the car set apart for those of another race the company will be held responsible for his bad conduct affecting the rights of other passengers, although the conductor may be ignorant of what is transpiring, and where the conductor or those managing the train know that one is in the wrong car, it is his duty to expel him, and by consenting to his remaining the company becomes responsible for his conduct so long as he does remain. * * * It may be contended that the white passenger having been assigned to his proper coach, and then leaving it without the knowledge of the conductor, exempts the company from liability unless the conductor knows of the wrongs being committed or the purpose of the passenger, by reason of his conduct, to mistreat passengers. This would perhaps be a rational conclusion unless it further appeared the conductor, or those controlling the train, knew of the white passenger's presence in the colored compartment, and took no steps to require him to leave. Here the conductor assented to his remaining in the car until he dispatched his business with the old negro, and the company should be held responsible for his conduct so long as he remained, and any other construction of the duties of corporations and their agents, arising from the passage of this law, would nullify its provisions or amount to a disregard of the manifest purpose of the Legislature in enacting it . * * * Conductors, or those in charge of passenger trains, are invested with the power to protect those who, for the time being, are under their charge, and when it is shown they have exercised that vigilance that prudent men would exercise for the protection of the passenger, the company is relieved from liability." To the same effect is Wood v. L. & N. R. R. Co., 101 Ky., 703; L. & E. R. Co. v. Vincent, 29 Ky. Law Rep., 1049.

Under the principles announced in these cases, which we approve, there could be no doubt that if Jones had been assigned to or permitted to be or remain in the colored compartment by or with the consent of the conductor that the railroad company would be liable to a passenger in the colored compartment for any misconduct or violence of Jones. But, there is no evidence that the conductor, who was in charge of the train, knew or had any information that Jones was in or intended to go in the colored compartment until after the difficulty.

Jones was not in this compartment when the conductor passed through it, and at the time he went in the conductor was in another part of the train collecting tickets and fares. It, therefore, cannot be said that the conductor was in any respect neglectful of his duties under the statute. The fact that he failed or refused to remove from the colored compartment the two white men it was said were in there when he passed through taking up tickets, or failed to lock or station at the partition door the porter or brakeman to prevent white passengers from going into the colored compartment did not constitute a violation of the statute, and evidence upon these points should not have been admitted. Nor was it competent or relevant to show how passengers in the white department were conducting themselves. When the conductor went through the colored compartment and saw the two white men in there, it was undoubtedly his duty to have compelled them to leave the compartment; but his failure to do this did not visit any civil or criminal liability upon the company or any civil liability upon the conductor, as these white men were not guilty of any misconduct while in the colored compartment. But their mere presence there, with the knowledge of the conductor, subjected him to the penalty denounced by the statute against any conductor who fails or refuses to carry out the provisions of the statute. In other words, if a conductor knows or has information that white or colored passengers are in coaches or compartments set apart for the other race, and he fails or refuses to expel them from the coach or compartment they are wrongfully in, as soon as practicable and within a reasonable time, he may be punished for a violation of the statute; but, unless the passenger who is in the coach or compartment set apart for the other race commits some act of violence or is guilty of rude, insulting or abusive conduct that is calculated to humiliate or wound the feelings of passengers rightfully occupying the coach or compartment no one of these passengers will have any cause of action against the company for the failure of the conductor to observe the law. It will be noticed that the statute uses the words "conductor or manager" in defining the duty of trainmen and fixing the penalty for disobedience of the statute. Generally speaking, the conductor is the manager of the train, and we think the words "conductor" or "manager" are used interchange-

ably and intended to mean the same person, unless it should be that a person not called or designated a "conductor" should be in charge of a train, and in a state of case like this, he might appropriately be called the "manager." It has always been the practice of railroad companies in this State to have a conductor on every passenger train, and it is a matter of common knowledge that the conductor is the person who has charge of the train, controls its movements, and is held responsible by the company for obedience to its rules and regulations. It is also a matter of common knowledge that on all passenger trains there are brakemen, and on some of them porters, who assist in looking after the safety and comfort of passengers and in performing other duties incident to the operation of the train. But these brakemen and porters are under the control and supervision of the conductor, and do as he directs them. The method of operating passenger trains, and the designation given to employes, was well known to the Legislature that adopted this carefully prepared law and if it had been intended to embrace brakemen or porters or other agents or employes, except conductors or managers, the act would have so provided. The failure to mention in the act any servants or employes, except conductors or managers, was not the result of inadvertence or mistake. It therefore seems obvious that in designating only conductors and managers it was intended to exclude other servants or employes, and to hold only the conductor or manager of the train responsible for the observance of the law, and consequently the company is only civilly liable in cases like the one under consideration when the conductor or manager violates the law. As it was the purpose of this statute to only hold responsible, and punish for a failure to perform the prescribed duty, the person in charge of the train, whether he be called a conductor or manager, and as no other person except the one in control of the train is charged with the duty of enforcing the law or punished for his failure to do so, the company cannot be held responsible in a civil action for any act or omission of duty in respect to the enforcement of this law, unless it is committed by the person in charge of the train, to-wit: The conductor or manager. But, we are further of the opinion that if a brakeman, porter or other employe connected with the passenger department of the train in the performance of duties that

relate to the comfort, convenience or safety of the passengers, knows or has information that a passenger is riding in a car or compartment set apart for another race, that he should as soon as practicable and within a reasonable time notify the conductor of this fact, and that the conductor, upon receiving the information, should as soon as practicable and within a reasonable time remove the offending passenger. Brakemen and porters are servants of the company under the control of the conductor, and while they are not charged with the enforcement of the law, or personally responsible for a failure to execute it, it is nevertheless their duty as servants of the company and assistants of the conductor to use all reasonable means to secure obedience to the statute, and when one of these subordinate employes knows or has information that this statute is being violated, and fails as soon as practicable and within a reasonable time to notify the conductor of the fact, the company should be held responsible upon the ground that through its employes it is consenting to or acquiescing in a violation of the law.

The statute imposes upon all railroad companies the duty of providing separate coaches or compartments for the white and colored races, and, therefore, the company through all its servants who are connected with the passenger service should make every reasonable effort to require passengers to obey the law. It is not meant by what we have said to leave the impression that brakemen and porters should not, without calling on or notifying the conductor, enforce obedience to the statute, as there is no doubt that as agents and servants of the company, it is not only their right but their duty to make reasonable efforts to require its observance; but, for the failure to do so, the company will not be civilly liable for a violation of the statute. Nor would we be understood as holding that the duty and liability of the conductor, as well as the company, for his acts is confined to instances in which he knows or has information from an agent or employe of the company that the statute is being violated. When the conductor receives information from any source that the statute is being violated, he should as soon as practicable and within a reasonable time take appropriate steps to compel its observance.

Having this view of the law of the case, it will be seen that the liability of the company in this case depends

upon the question whether or not the porter performed his duty in the manner we have ruled he should.   In other words, it was the duty of the porter as soon as practicable and within a reasonable time after discovering that Jones was in the colored compartment, to notify the conductor, and the duty of the conductor as soon as practicable and within a reasonable time after receiving the notice to eject him.   Therefore, if the porter had exercised the diligence required, and the conductor could within the time indicated have removed Jones from the car before he killed Renfro, the company is liable, unless Jones killed Renfro in self-defense.   The porter is the only witness who testifies that he, the porter, saw Jones in the colored compartment, but it is not shown by his evidence or that of any other person that after he first saw him there it was practicable for him within a reasonable time to notify the conductor or that it would have been practicable for the conductor within a reasonable time after receiving the information, if it had been conveyed to him, to have ejected Jones before the difficulty.

It results from these considerations that the motion for a peremptory instruction should have been sustained. If there is a retrial, the court in addition to instructing the jury as indicated, should instruct them that if Jones shot and killed Renfro in his necessary self-defense, they cannot allow any damages for his death.   In other words, upon this point the court should give the instruction usually given in criminal cases.

Wherefore, the judgment is reversed, with directions for a new trial in conformity with this opinion.