## Bogard's Admr. v. Illinois Central Railroad Co.

(Decided October 6, 1911.)

### Appeal from Marshall Circuit Court.

Railroads—Knowingly Suffering Passengers on Train Affected With Contagious Disease.—No liability should attach to a railroad company for carrying on its train a person affected with measles or other contagious disease in the absence of evidence that the officers or servants in charge of the train had some knowledge or notice that a passenger thereon, was afflicted with such disease and failed to exercise ordinary care to prevent contagion to other passengers on the train.

ZEB. A. STEWART for appellant.

OLIVER & OLIVER, BLEWITT LEE and C. L. SIVLEY and TRABUE, DOOLAN & COX for appellee.

Opinion of the Court by Judge Settle—Affirming.

This action was brought by appellant as administrator of the estate of his deceased infant son, to recover of appellee damages for his death from measles, alleged to have been contracted by the child while a passenger on

its train, from another passenger in the same coach; it
being averred in the petition that this passenger had the
measles; that the fact of his having the disease was
known to appellee's conductor in charge of the train, or
by the exercise of ordinary care could have been dis-
covered by him, and that notwithstanding such knowledge
on the part of the conductor, or means of ascertaining
that the passenger in question was affected with measles,
he negligently failed to inform the child of appellant or
the child's mother, who was with him, of the presence in
the coach of the infected passenger, or to cause the latter
to leave the coach that others might not contract the
measles from him. Within a week of the arrival of ap-
pellant's family at Murray, one of the children became ill
with the measles. Two or three days later the infant de-
cedent took the disease, and after an illness of a week
died.

It appears from the bill of evidence that appellant
and his family resided in Carterville, Illinois; that meas-
les was prevailing there and that he sent his wife and
children to Murray, Kentucky, the home of relatives,
that they might escape the contagious disease. They
were on the way to Murray when they encountered the
passenger from whom, it is claimed, the child contracted
the measles. According to the testimony of Mrs. Bo-
gard, mother of the infant decedent, and one or two other
passengers on appellee's train, the unknown man, al-
leged to have been afflicted with the measles, entered the
coach in which they were riding at a station where the
train made a stop after leaving Carterville; and that his
face manifested an eruption much like measles. Mrs.
Bogard further testified that he took a seat next to and
in the rear of the seat occupied by herself and children,
and leaned forward with his head resting much of the
time on the back of their seat; and that soon after he had
thus placed himself the conductor entered the coach and
took up his ticket, in doing which he raised the hat from
the passenger's head as if to see his face.

If the latter then had the measles it does not appear
from the evidence that the conductor discovered it. At
any rate, no statement was made by him indicating that
it then became known to him, nor does it appear from the
evidence that it was actually brought to his knowledge
while the passenger remained in the coach. The mother
of the deceased infant did not claim that she or any other
occupant of the coach informed the conductor that the

passenger in question had the measles or was suspected of having the disease, and the conductor in testifying denied any knowledge of his having the disease. It is true the inference of such knowledge, arising from his lifting the hat of the passenger as his head rested upon the back of the seat in front of him, might be indulged. But it is equally as reasonable to infer that the conductor supposed the passenger was asleep and raised his hat for the purpose of awakening him that he might take up his ticket, and if so, a cursory view of his face under such circumstances might not have enabled the conductor, unskilled as he was in diagnosing diseases, to discover that its appearance was unusual, or indicative of his being affected with measles. The foregoing evidence was allowed to go to the jury, and, being unconvinced by it that appellee's conductor discovered that the unknown passenger had the measles, their verdict was for the appellee; hence judgment was entered in conformity thereto. Appellant complains of that judgment and of the refusal of the circuit court to grant him a new trial.

His only material contention is, that the court erred in instructing the jury. The alleged error complained of is found in instructions one and two, the second being the converse of the first. Both, in substance, advised the jury that, although they might believe from the evidence the infant decedent died of measles contracted from a fellow passenger on appellee's train, they should nevertheless find for appellee, unless they further believed from the evidence that the conductor in charge of appellee's train knew or discovered that such passenger was afflicted with the measles, in time, and by the use of ordinary care, to have prevented the decedent from contracting the disease, and at the same time protect, as far as the use of ordinary care would enable it to do, the health of the passenger afflicted with the measles.

It is insisted for appellant that appellee is responsible for the death of his son of measles contracted of the fellow passenger, if its conductor knew, or by the exercise of ordinary care could have known, of the fellow passenger's having the measles in time to have prevented the decedent from contracting the disease; whereas the jury were told by the two instructions in question that actual knowledge on the part of the conductor that such passenger had the measles was necessary, and that appellee was only liable for the failure of the conductor to use ordinary care to protect the decedent from con-

tagion, after discovering that the fellow passenger had the disease.

In our opinion the instructions correctly state the law. No liability should be made to attach to a railroad company in a case like this, in the absence of proof that the officers or servants in charge of its train, upon which the person claiming to have been injured was being carried as a passenger, had some knowledge or notice that a passenger thereon was afflicted with a contagious disease and then failed to promptly exercise ordinary care to prevent contagion to other passengers on the train, such as the circumstances would admit of, considering the duty of the railroad company both to the passenger afflicted with the contagious disease, and the passenger entitled to protection against contagion therefrom.

The question here is, when did it become the duty of appellee's conductor to protect appellant's decedent from the injury complained of? Obviously, the moment the conductor discovered there was a passenger aboard the train afflicted with the measles, a contagious disease, calculated to endanger human life or health. Adoption by the courts of the rule of diligence contended for by appellant's counsel, would require all carriers of passengers to keep on each of its trains or at each of its passenger stations, a skilled physician to examine every person obtaining or demanding transportation, to avoid the possibility of receiving a passenger affected with a contagious disease.

Neither innkeepers, proprietors of theatres, schools, nor churches, have ever been subjected to such an unreasonable rule of diligence, and no sound reason is perceived for applying it to carriers of passengers. We are not aware that the precise question here presented has ever come to us for decision, but the principle decisive of it has been applied to analogous facts by this and other courts of similar jurisdiction, in numerous cases.

A common carrier, independently of the contractual relation, is under a general obligation to receive and carry upon its trains all proper persons who apply for transportation and offer to pay the regular fare for such service. By the terms "proper persons" is meant, persons whose status or condition apparently entitle them to be carried as passengers. On the other hand, the carrier has the right to refuse to receive or carry as passengers, improper persons; that is, persons whose condition or conduct is such from intoxication, disorderly conduct,

contagious diseases or other things, as to make their presence on the train dangerous to the lives or health of other passengers. Likewise if the condition or conduct of a person, after being received as a passenger, becomes such as to endanger the lives or health of other passengers or to unreasonably annoy or offend them, it is the right and duty of the carriers' servants in charge of the train, upon receiving notice thereof, to eject such offending person from the train, but in doing so they must also exercise due care to protect his health and person from danger or unnecessary discomfort.

In such a case the carrier is bound to exercise a reasonable discretion, according to conditions as they reasonably appear at the time. Thompson on Negligence, Vol. 3, Sec. 3225.

The principle that must control the servants of the carrier in a case like the one before us, is correctly stated in the opinion in the case of Clark's Admx., et al. v. Louisville & Nashville R. R. Co., 20 Ky. Law Rep., 1839. In that case Clark was a passenger on the defendant's train. Another passenger took a quantity of gasoline into the same coach in which Clark was riding; it ignited and exploded, by reason of which he was severely injured. The trial court peremptorily instructed the jury to find for the defendant. In the opinion, affirming the judgment, it is said:

"It may be stated briefly, in assuming the liability of a railroad to its passenger for injury done by another passenger, only where the conduct of this passenger has been such before the injury as to induce a reasonably prudent and vigilant conductor to believe that there was reasonable ground to apprehend violence and danger to the other passengers, and in that case asserting it to be the duty of the conductor of the railroad train to use all reasonable means to prevent such injury, and if he neglects this reasonable duty and the injury is done, that then the company is responsible, otherwise it is not."

The opinion quotes with approval from the opinion in the case of Gulf O. S. F. R. R. Co. v. Shields, 29 S. W., 652, in which case the plaintiff was injured by alcohol which had been carried upon the train by another passenger. In the opinion in that case it is said:

"It was but a short period of time after the alcohol was spilt when it was set on fire and the accident occurred, and it was not shown that appellant's employes knew that the jug contained alcohol. In fact, it is not

shown that the conductor or any other employe knew that Harris had a jug with him until it fell out of a sack, though the conductor had collected his fare, and doubtless knew he had the sack on the seat with him. It cannot be successfully denied that Harris had the right as a passenger to carry baggage in the train, and that he had a right to carry it in a sack if he chose to do so. We think it is equally clear that in the absence of some intimation or circumstance indicating that the sack contained something dangerous to other passengers, it was not the duty of appellant's conductor or other employes to open the sack and examine its contents." Quinn v. Louisville & Nashville R. R. Co., 98 Ky., 231; Wood v. Louisville & Nashville R. R. Co., 101 Ky., 703; L. & E. R. R. Co. v. Vincent, 29 Ky. Law Rep., 1049; Louisville & Nashville R. R. Co. v. Renfro's Admr., 142 Ky., 590.

A case more directly in point is that of Long v. Chicago, Kansas & Western R. R. Co., 15 L. R. A., 319. In that case Long, in purchasing a ticket to ride on defendant's railroad, contracted the smallpox from Clayton, its agent, who sold him the ticket, and he sought to recover of the railroad company damages for the injury thus sustained. The trial court sustained a demurrer to the petition. On the appeal the Supreme Court of Kansas held that the plaintiff was without right of recovery, saying in the opinion:

"In this case it is not charged that the railroad company or any of its superior officers knew that its agent at Annis was afflicted with any disease, contagious or otherwise. We do not think that a master or a railroad company is liable in damage to a third person, because such person has contracted a contagious or infectious disease from an agent, when the master or company has no knowledge that the agent is afflicted."

In view of the foregoing authorities, we must express our approval of the instructions given by the trial court in the case at bar, and as the evidence in the case authorized the verdict returned by the jury, no reason is perceived for disturbing the judgment. It is, therefore, affirmed.