## BAKER v. TEXAS & P. RY. CO.

(Court of Civil Appeals of Texas. Texarkana. May 19, 1913. Rehearing Denied May 29, 1913.)

1. CARRIERS (§ 321*)—INJURY TO PASSENGERS —COLORED AND WHITE PASSENGERS—SEPARATION—STATUTES.

Rev. Civ. St. 1911, art. 6753, declares that conductors of passenger trains provided with separate coaches for the races shall have authority to refuse any passenger admittance to any coach or compartment in which he is not entitled to ride under the provisions of the law, and it shall be the conductor's duty to remove from a coach any passenger not entitled to ride therein. *Held*, that where plaintiff's wife, a colored person, was assaulted by a white man, improperly riding in a coach for colored persons, the court should have charged the jury to find for plaintiff if they believed defendant knew, or in the exercise of the high degree of care it owed to plaintiff's wife should have known, that the person guilty of the assault and his companions were in the coach assigned the negroes, unless they further believed that plaintiff's wife by her own wrongful conduct provoked the assault, and but for such conduct would not have been assaulted.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1247, 1326–1336, 1343; Dec. Dig. § 321.*]

2. CARRIERS (§ 305*)—INJURIES TO PASSENGERS—ASSAULT—PROXIMATE CAUSE.

Where plaintiff's wife, a negress, was assaulted by a white man in a car set apart for negroes, in which she was riding, the carrier's wrongful act in permitting his presence in the car was the proximate cause of her injury, unless she provoked the assault by her own misconduct.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1132, 1136–1139, 1245, 1246; Dec. Dig. § 305.*]

Appeal from District Court, Red River County; Ben H. Denton, Judge.

Action by Arch Baker against the Texas & Pacific Railway Company. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

Chambers & Black, of Clarksville, for appellant. Head, Smith, Hare & Head, of Sherman, for appellee.

WILLSON, C. J. While a passenger on one of appellee's trains moving from Paris to Clarksville, where she resided, appellant's wife, Ada Baker, a negress, was assaulted and injured by one Pat Melton, a white passenger on the same train. By his suit against appellee appellant sought a recovery of damages for the injury to his wife. A trial before a jury resulted in a verdict and judgment in favor of appellee.

Appellee contended that the assault on appellant's wife was provoked by insulting language used by her to Melton, and as supporting its contention relied on Melton's testimony as follows: "After the train left Paris me and Fred Ellison went in a nigger coach. Fred said there was a nigger on the train that he owed, and he said he would go in there and see if he could find him. I do not know Ada Baker. We had started in at the back end of the coach there among the niggers, and I saw a couple of niggers that I knew and stopped and was talking with them, and there was a nigger just in front of us that looked like he was asleep, and I looked over to see if I knew him, and this nigger woman asked me what in the hell I was doing in there, and I told her not anything; that I was not going to bother her; she said she knew damned good and well I was not going to bother her, and I hit her with the bottle. I hit her because I thought she needed it. I was not drunk that night. I was just pretty well organized. I had had three or four drinks that evening." Appellant contended, and his wife and other witnesses in effect testified, that the assault on his wife was wholly unprovoked by any conduct on her part towards Melton. As further supporting his contention appellant offered, and the court admitted testimony tending to show, that Melton and his companions were drunk, and before the assault was made on appellant's wife had made unprovoked assaults on other colored passengers on the train, and in other respects conducted themselves in a manner indicating an utter disregard of the rights of the negro passengers. Appellant then offered to prove by his witness Jackson "that he (witness)," quoting from the bill of exceptions, "was sitting in the negro coach just behind the coach in which Ada Baker was sitting when Pat Melton struck her with the bottle; that he did not see the blow struck, but that he heard it, and that very soon after he heard the blow struck that this man Pat Melton and the other two boys that were with him came back into the negro coach where he was sitting, and Pat Melton had in his hand an iron pin about the size of a railroad spike and drawed it back as if to strike witness, and one of the other two boys that were with him grabbed the pin and threw it out of the window and broke out the window glass." This testimony was excluded by the court, on appellee's objection thereto, on the ground that it was irrelevant and immaterial. The action of the court in excluding it is assigned as error. We think the testimony excluded was relevant and material to the issue as to whether appellee's wife by her wrongful conduct provoked Melton to assault her or not, submitted to the jury by the charge of the court. In connection with other testimony in the case it tended to show a reckless and abandoned state of mind on the part of Melton, to corroborate the testimony of appellant's wife that she did not use the language, or anything like it, attributed to her by Melton, and to rebut the contention made that Melton was provoked by wrongful conduct on the part of appellant's wife to assault her.

It appeared that Melton struck appellant's wife on the head with a whisky bottle at a

time when she was in a coach set apart by appellee for negro passengers on its train. It further appeared that Melton was one of three young white men who, in violation of law, were permitted—whether knowingly or not was a disputed issue in the case—by appellee's employés in charge of the train to be in that coach. In his petition appellant alleged, as one of the grounds upon which he sought a recovery, that appellee was "careless and negligent in permitting the said three young white men to ride in the coach provided for negroes, and that it wrongfully and negligently and in disregard of law violated its duty in permitting these young white men to go into and occupy the negro coach, and it was the duty of defendant's conductor to remove them from said car, and he carelessly and negligently failed to do so, although he knew of their presence in said car provided for negroes, or might have known it by the exercise of that degree of care required by law." The court, in effect, instructed the jury to find for appellant if they believed his wife was assaulted and injured as alleged in his petition, and further believed that such assault might reasonably have been anticipated and guarded against by appellee's employés in charge of the train by the exercise of a high degree of care on their part, unless they believed that appellant's wife used insulting words to Melton which were calculated to and did provoke him to assault her, and that in using such words she was guilty of negligence, in which event they should find for appellee.

[1] Section 9 of the statute, requiring railway and certain other companies to provide separate coaches for white passengers and negro passengers, is as follows: "Conductors of passenger trains, street cars, or interurban lines, provided with separate coaches, shall have authority to refuse any passenger admittance to any coach or compartment in which they are not entitled to ride under the provisions of this law; and the conductor in charge of the train or street car, or interurban car, shall have authority, and it shall be his duty, to remove from a coach or street car, or interurban car, any passenger not entitled to ride therein under the provisions of this chapter, and upon his refusal to do so knowingly shall be punished as provided in the Penal Code of the state." Article 6753, Rev. Stat. 1911. In view of the allegations in the petition referred to, the testimony, and the statute from which we have quoted, we think the court, instead of instructing the jury as he did, should have told them, in effect, to find for appellant if they believed appellee knew, or in the exercise of the high degree of care it owed to his wife should have known, that Melton and his companions were in the coach assigned to negroes, unless they also believed that appellant's wife by her own wrongful conduct towards Melton provoked him to assault her,

and that but for such conduct on her part he would not have assaulted her.

[2] If the assault on appellant's wife was not provoked by her wrongful conduct, the wrong of appellee in permitting Melton, if it did, to be in the coach, was, we think, the proximate cause of the injury she suffered, and appellee was liable, as claimed by appellant. This seems to be the view taken of the question by the Supreme Court of Kentucky, which has a statute similar to our own. Quinn v. Ry. Co., 98 Ky. 231, 32 S. W. 743, 17 Ky. Law Rep. 811; Wood v. Ry. Co., 101 Ky. 703, 42 S. W. 349, 19 Ky. Law Rep. 924; Bailey v. Ry. Co., 44 S. W. 105, 19 Ky. Law Rep. 1617; Railway Co. v. Renfro, 142 Ky. 590, 135 S. W. 266, 33 L. R. A. (N. S.) 133. As applicable, in much that is said, to the case made by the record before us, and as suggesting the reasons why we think the court should have instructed the jury as indicated, we quote at some length from the opinion of the court in the Quinn Case cited above: "While the mere presence of the intruder into the coach for colored persons, with knowledge of the conductor, would not give to the occupants a cause of action against the corporation, we cannot concur with counsel or the court below that the separate coach law has no application to the facts of this case. It is not necessary, in order to permit a recovery, to show that the conductor knew of this bad treatment of the colored passenger, or from his condition had the right to anticipate it was the purpose of the intruder to produce trouble. He should not be allowed to enter the car, or to remain there after his presence is discovered. In the transportation of passengers prior to the passage of the separate coach bill, the frequent disturbances arising between the two races, resulting often in serious injuries being inflicted by the one on the other, and the danger to other passengers, led to the enactment of this law as a police regulation, in order to prevent, as far as possible, these altercations upon railroad trains, and to check the disposition of those of the dominant race to offend and humiliate those who were entitled to the protection of the law. No discrimination is made by the law in favor of the one race or the other. Each have the same facilities as to transportation, as to conveniences and accommodations, in the coach to which they are assigned. In order to make this law more effectual, heavy penalties are imposed on the railroad companies for not having separate coaches, and upon the conductors, or those in charge of trains, for not assigning to each white or colored passenger their respective compartment. St. Ky. 797–800. If, as we shall assume was the case, each one of the passengers had been assigned to the coach required by the statute, and the white passenger had left his coach, and gone into the coach with these colored people, without the knowledge of the

conductor while he was attending to his duties in the other cars, and had there abused and insulted the appellant, it is plain no action could be maintained against the company; but, when the white passenger is assigned to the cars set apart for those of another race, the company will be held responsible for his bad conduct affecting the rights of other passengers, although the conductor may be ignorant of what is transpiring; and where the conductor, or those managing the train, knows that one is in the wrong car, it is his duty to expel him, and by consenting to his remaining the company becomes responsible for his conduct so long as he does remain. If a contrary rule is applied, and no liability exists on the part of the corporation to the passenger, the separate coach law becomes a dead letter, and those who are entitled to its protection have no means of enforcing its provisions but by an indictment, where a penalty may be adjudged in favor of the state. It is made the duty of conductors, under heavy penalties, to execute this law; and, where there is a neglect of duty for which a penalty is imposed, and private injury results from this neglect, a cause of action arises in favor of the person injured. This is the universal rule applicable to such cases, and should be made to apply to the facts of this case."

For the error of the court in excluding the testimony referred to, the judgment is reversed and the cause is remanded for a new trial.