## Louisville & Interurban Railroad Company v. Garr.

(Decided June 19, 1925.)

### Appeal from Oldham Circuit Court.

1. Carriers—Conductor's Duty to Require White Passenger to go Into White Coach, and Railway Liable for Assault on Conductor's Failure to do so.—If conductor of interurban railway knew, or had opportunity for knowledge, that white passenger was in car set apart for colored passengers, it was his duty to require white

passengers to go into white coach, or make reasonable effort to that end, and, if he failed to do so, railway is liable for assault on white passenger by colored passenger.

2.    Carriers—Evidence Held to Sustain Verdict for White Passenger Against Interurban Railway for Assault by Colored Passenger.— In action against interurban railway by white passenger, assaulted by colored passenger, evidence as to how cars were marked, and as to whether conductor knew of presence of white passenger in car assigned to colored passengers, and made no attempt to separate them, held sufficient to go to jury, and to sustain verdict for plaintiff.

WILLIS, TODD & WILLIS for appellant.

ROBERT T. CROWE and WM. J. CROWE, for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

About 12 o'clock on the night of Derby day, 1922, appellee Garr boarded a car of appellant, Louisville & Interurban Railway Company, at its station, in the city of Louisville, to be carried, as a passenger, to Lagrange, and while in the car and only a short time after it left the station he was struck and injured by a colored boy, also a passenger, and this suit against the company to recover damages, resulted. A jury awarded a verdict against the company for $500.00, on which judgment was entered, and the company appeals, insisting (1) that the trial court should have directed a verdict in its favor; (2) the damages are excessive and appear to have been given under prejudice and passion; and (3) the verdict is not sustained by the evidence and is contrary thereto.

According to the evidence for the company there had been a mishap on the road and the cars were running late. This train consisted of two electric cars. Its conductor testified that when the cars pulled into the station preparatory to leaving for LaGrange, he publicly announced that the white passengers should take the front car and the colored passengers the rear car, and accordingly the front car was loaded with white passengers only, and he saw no one but colored passengers go into the rear car; that some white passengers started to enter the rear car but he told them to take the front car, and, they did so; that he did not know that any white passengers were in the rear car; that both cars were crowded; that before bringing the cars out he examined them to see if the proper signs were up, indicating a sep-

aration of the races and that on the front car there was a placard reading, "White Passengers Only," and on the rear car a similar placard was displayed bearing the words, "For Colored Passengers Only;" that these placards were up in both compartments of each car; that the entire front car was reserved for white passengers and the entire rear car for colored passengers; that he boarded the front car, as was his duty, and that he did not know of any trouble in the rear car and did not know that appellee, Garr, was in that car; or that he was struck or injured, or that there was any likelihood of any trouble in that car either at the time the car left the station at Louisville, or at any time thereafter until after the happening of the event of which appellant complains. There is, however, some evidence to show that the conductor in charge of the train had information that Garr was in the rear car with the colored people. It is also proven by appellee, Garr, and other witnesses that the fight which occurred and in which Garr was injured, started very soon after the car left the station and before it had traveled more than three blocks; that it was soon over and everything quiet.

For the plaintiff, Garr, now appellee, there was evidence that the rear car in which he rode was marked, "For White Passengers Only," and that there were several white people in that car before and at the time it left the station in Louisville; that the conductor was at one time in the car where he could see the conditions. One witness testified he saw the conductor in the car in which both races were riding, and the conductor says he saw a man like appellee, Garr, enter the rear car where colored passengers were, but he does not say he removed him, or asked him to go into the front car, or informed him that the rear car was for colored passengers only. There was, therefore, evidence sufficient to carry the case to the jury on the question of how the cars were marked and as to whether the conductor in charge of the train as it left the station in Louisville, knew of the presence of appellee, Garr, and other white persons in the rear car assigned to colored passengers, if it were so assigned.

It is generally held that a common carrier, like appellant company, is only liable for an assault on a passenger by a fellow passenger when it has knowledge or reasonable notice that such an assault is about to take place and has opportunity to prevent it. Its liability

rests upon its negligent omission, through its servants, to prevent the tort being committed. The failure to prevent the commission of the tort, to be a negligent failure or omission, must be a failure or omission to do something which could·have been done by a servant; and, therefore, there is involved the essential ingredient that the servant of the company had knowledge, or·with proper care could have had knowledge, that the tort was imminent, and that he had that knowledge, or had an opportunity to acquire it, sufficiently long in advance of its infliction to have prevented it with the force at his command. 4 R. C. L. 1185; Adams v. Louisville Railway Company, 134 Ky. 620; 36 L. R. A. (N. S.) 337; Louisville &c. R. Co. v. Brewer, 147 Ky. 166; Bogard v. Ill. Central Railway Co., 144 Ky. 649, 39 L. R. A. (N. S.) 647; L. & N. R. R. Co. v. Renfro's Admr., 142 Ky. 590.

A railway company cannot be held liable, so it is held by some courts, for an assault by a fellow passenger unless it, through its conductor or other servant in charge, has knowledge of conditions or facts which would apprise a reasonably prudent person engaged in transporting passengers for hire that such an assault is to be anticipated and has opportunity, after obtaining such knowledge, to prevent the assault. However, in the case of L. & N. R. R. Company v. Renfro, *supra,* we, in part said:

"Under the principles announced in these cases, which we approve, there could be no doubt that if Jones had been assigned to or permitted to be or remain in the colored compartment by or with the consent of the conductor that the railroad company would be liable to a passenger in the colored compartment for any misconduct or violence of Jones. But, there is no evidence that the conductor, who was in charge of the train, knew or had any information that Jones was in or intended to go in the colored compartment until after the difficulty. Jones was not in this compartment when the conductor passed through it, and at the time he went in the conductor was in another part of the train collecting tickets and fares. It, therefore, cannot be said that the conductor was in any respect neglectful of his duties under the statute. The fact that he failed or refused to remove from the colored compartment the two white men it was said were in there when he passed through taking up tickets, or failed to lock

or station at the partition door the porter or brakeman to prevent white passengers from going into the colored compartment did not constitute a violation of the statute, and evidence upon these points should not have been admitted.   Nor was it competent or relevant to show how passengers in the white department were conducting themselves. When the conductor went through the colored compartment and saw the two white men in there, it was undoubtedly his duty to have compelled them to leave the compartment; but his failure to do this did not visit any civil or criminal liability upon the company or any civil liability upon the conductor, as these white men were not guilty of any misconduct while in the colored compartment.   But their mere presence there with the knowledge of the conductor, subjected him to the penalty denounced by the statute against any conductor who fails or refuses to carry out the provisions of the statute.   In other words, if a conductor knows or has information that white or colored passengers are in coaches or compartments set apart for the other race, and he fails or refuses to expel them from the coach or compartment they are wrongfully in, as soon as practicable and within a reasonable time, he may be punished for a violation of the statute; but, unless the passenger who is in the coach or compartment set aside for the other race commits some act of violence or is guilty of rude, insulting or abusive conduct that is calculated to humiliate or wound the feelings of passengers rightfully occupying the coach or compartment, no one of the passengers will have any cause of action against the company for the failure of the conductor to observe the law.''

Elliott on Railroads, second edition, p. 555, lays down the rule in this wise:

''Although railroad companies are not, perhaps, bound to protect their passengers from injuries by third persons and other passengers to the same extent that they are bound to protect them from injuries by their employes, yet it is their duty to use proper care and vigilance to protect them from injuries by such persons that might reasonably have been foreseen and anticipated.   As a railroad company is in duty bound to use care and vigilance to protect its passengers who have placed themselves

under its control, and as it has the right and power to eject disorderly persons, it is liable to a passenger who, without fault on his part, is assaulted and injured by a stranger or a fellow passenger, if it or its employes in charge of the train could reasonably have foreseen and prevented it."

In treating upon this subject Michie on Carriers, vol. 3, page 2022, says:

"To render a carrier of passengers liable for failure to protect a passenger or other person to whom it owes protection from insult or injury at the hands of the fellow passenger or third persons, where it has no knowledge that such injury is threatened, the circumstances must be such that those in charge of the train, using the utmost vigilance and care, or that extreme care and caution which very prudent persons exercise, should have foreseen that the injury was threatened. When such circumstances come to their knowledge it is the duty of the employes to take all reasonable precautions to prevent the injury. If there is nothing to cause an extremely prudent person to apprehend such an injury the carrier is not liable. Thus it is said that the duty of a carrier to provide accommodations sufficient for the safe transportation of its passengers, extends to taking extra precautions, when the carrier has reasonable grounds to anticipate unusual hazard to its passengers, and to the employment of a sufficient force of employes to protect innocent passengers from the assaults of other passengers, when it has reasonable grounds to apprehend such assaults from passengers in such numbers or force as to be beyond the control of the ordinary train crew."

"While a common carrier is not an insurer of its passengers' safety," says 10 C. J., p. 900, "and is perhaps not bound to protect its passengers from injuries by third persons to the same extent and degree as from like injuries by its own agents and employes, yet it is the duty of the employes to exercise great care and vigilance in preserving order and in guarding passengers from annoyance, violence, or insult threatened by fellow passengers; and where the carrier, through its agents or employes, knows, or has opportunity to know, of a threatened injury by a fellow passenger, or might reasonably

anticipate the happening of such an injury and fails or neglects to take the proper precaution, or to use proper means to prevent or mitigate such injury, it is liable therefor.''

If the conductor knew, or had such opportunity for knowledge as would have advised a reasonably prudent person that appellee, Garr, was in the car set apart for colored passengers, it was his duty to require Garr to pass into the white coach, or to make a reasonable effort to that end, and if he failed to do so the company is liable under the rule announced in the case of L. & N. R. R. Co. v. Renfro, *supra*, where we said:

"It will be noticed that under this statute railroad companies are required to provide separate compartments or coaches for white and colored passengers, and that the conductors or managers of trains are required to assign white and colored passengers to the respective cars or compartments set apart for their use, and to compel them upon pain of ejection from the train to occupy such cars or compartments. There is no complaint that the railroad company did not provide compartments in accordance with the statute, and so part of the statute need not be further noticed. But under this statute if the conductor or manager of a train permits white or colored passengers to be or remain in a coach or compartment set apart for the other race, after he knows or has information that they are in such coach or compartment, the company will be liable in damages if any passenger rightfully occupying his coach or compartment is humiliated, insulted, injured or killed by a passenger who is permitted to remain in a coach or compartment set apart for use and occupancy of the race of which he is not a member.''

According to the testimony for the railroad company, appellee, Garr, was in the wrong car, but appellee, Garr, says he was in a car marked in a conspicuous place "For White Passengers Only,'' and, therefore, at a place he had a right to be and remain. The jury was instructed to find for the railroad company if it believed from the evidence that the car was marked as contended by the appellant, railroad company, "For Colored Passengers Only.'' The verdict for Garr indicates clearly the jury believed that the car was not marked as claimed

by the railroad company, but was marked "For White Passengers Only," as claimed by appellee, Garr.

As there was evidence tending to prove that the appellant company's conductor in charge of the train knew the races were mixed in the rear car, and did not attempt to separate them, and that the sign on that car read "For White Passengers Only," it cannot be said the verdict is against the evidence. Nor can we say from the evidence of the injuries inflicted on Doctor Garr that the verdict for $500.00 is excessive.

Judgment affirmed.