MISSOURI, K. & T. RY. CO. OF TEXAS v. BROWN et al.

(Court of Civil Appeals of Texas. Galveston. May 1, 1913. Rehearing Denied June 19, 1913.)

1. RAILROADS (§ 255*)—REGULATION—SEPARATE COACHES FOR WHITES AND NEGROES.

White's Ann. Pen. Code 1911, arts. 1010–5, 1010–9, punishing any person riding in a coach not designated for his race, and punishing any conductor failing to remove from a coach any person not entitled to ride therein, do not prohibit a white peace officer from entering a negro coach in performance of his duty.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 773–788; Dec. Dig. § 255.*]

2. RAILROADS (§ 255*)—MARSHALS—DUTIES—STATUTORY PROVISIONS.

Under White's Ann. Code Cr. Proc. arts. 3, 44, requiring peace officers, which include city marshals, to interfere, without warrant, to suppress crimes, a white city marshal may enter a negro coach within the corporate limits of the city to investigate a prior disturbance therein, and ascertain whether it is necessary to take steps to prevent its recurrence; and the mere fact that a person in the coach, who has been guilty of a disturbance, is then quiet does not deprive the officer of his right to act.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 773–788; Dec. Dig. § 255.*]

3. CARRIERS (§ 284*)—INJURIES TO PASSENGERS—LIABILITY.

The failure of a passenger conductor to prevent a white city marshal from entering a negro coach does not render the carrier liable for the death of a negro in the coach killed by the marshal, unless the conductor could have reasonably anticipated that as a result of his failure decedent or some passenger in the coach would likely be killed or suffer injury.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1125, 1127–1135, 1173, 1222; Dec. Dig. § 284.*]

4. CARRIERS (§ 284*)—INJURIES TO PASSENGERS—LIABILITY.

The mere unauthorized presence of a white person in a negro coach is not a violation of any right of negro passengers, and gives them no cause of action against the carrier.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1125, 1127–1135, 1173, 1222; Dec. Dig. § 284.*]

Appeal from District Court, Colorado County; M. Kennon, Judge.

Action by Hattie Brown and others against the Missouri, Kansas & Texas Railway Company of Texas. From a judgment for plaintiffs, defendant appeals. Reversed and remanded.

Alexander S. Coke and A. H. McKnight, both of Dallas, and Lane, Wolters & Storey and Wm. A. Vinson, all of Houston, for appellant. L. D. Brown, of La Grange, A. J. Wirtz, of Eagle Lake, and Ring, Carothers & Brown, of Houston, for appellees.

PLEASANTS, C. J. This suit was brought by appellees against appellant to recover the pecuniary loss sustained by them by the death of Earlie Hargrove, the son of appellee, Hattie Brown, who was joined in the suit by her husband, Jesse Brown, and Carrie Hargrove, the wife of the decedent.

The petition alleges, in substance, that the said Earlie Hargrove was unlawfully killed while riding as a passenger on one of appellant's trains by B. C. Clark; that C. H. Miller, the conductor of said train, in disregard of the rights of said Hargrove, who was a negro and riding in the compartment or coach on said train set aside for negro passengers, directed and instructed the said B. C. Clark, who was a white person, to enter said negro compartment in violation of law, and to trespass upon, interfere with, molest, and arrest, the said Hargrove; that acting in pursuance of the authority and instructions so given said Clark entered the coach wherein Earlie Hargrove was riding, and while he was asleep in the lap of his wife roughly awakened him, shook him, and commanded him to be searched; that this was done in the view and presence of the conductor, brakeman, porter, and auditor; that the said Earlie Hargrove, fearing the said Clark and the employés of the appellant, submitted to such search, and said Clark, being encouraged, directed, aided, and abetted by the agents of the appellant, wantonly, maliciously, and willfully, without authority of law or justification, shot and wounded said Earlie Hargrove, which wounds produced his death within a few hours.

It was further alleged that said Clark was acting without warrant of law, authority, or justification; that the said Miller, acting as defendant's conductor in the scope of his authority, and in the discharge of his duty, aided, abetted, encouraged, directed, and supported the said Clark at all times, and in all acts and things done and performed by him, after being called and directed to board said train by the said Miller; that the conductor, brakeman, porter, and auditor were there present, acting in conjunction with and aiding, abetting, encouraging, and directing the said Clark, and by exercise of reasonable care could have prevented the violence and injury, and could and should have prevented said Clark from entering said negro compartment, and should have ejected him therefrom; but that they wantonly, willfully, negligently, and carelessly failed and refused to give said Hargrove protection from said violence and injury, and participated in the shooting.

It was further alleged that the conductor, and other employés of the appellant, knowingly, willfully, and negligently, in violation of the law of this state providing for

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

separate compartments for white and negro passengers, permitted and directed said Clark, a white passenger, to enter and remain in a compartment provided for negro passengers, wherein the said Hargrove was lawfully riding, and failed and refused to eject him therefrom, after knowing that he was unlawfully in such compartment; that the negligent acts, omissions, and failure to perform their duties on the part of the appellant's agents, servants, and employés were the direct and proximate cause of the death of the said Earlie Hargrove.

The defendant answered by general denial, and specially pleaded that the said Earlie Hargrove was killed at or near the town of Bastrop, while engaged in an altercation and difficulty with B. C. Clark, the city marshal of the town of Bastrop, who was a passenger on said train, and that the said city marshal was compelled to and did kill said Earlie Hargrove in order to save his own life from an attack made upon him by said Hargrove; that none of its agents or employés invited or consented to the said city marshal engaging in said altercation, difficulty, and affray, and did not aid or assist said marshal in any manner while engaged therein, and did not advise or request said marshal to arrest, or attempt to arrest, said Earlie Hargrove, nor consent to said marshal's attempting to make such arrest; that at the time said marshal entered the coach in which Earlie Hargrove was riding its agents or employés did not anticipate, and could not reasonably have anticipated, that any altercation or difficulty could or would naturally arise between the said city marshal and said Earlie Hargrove, and did not and could not have anticipated that a difficulty would arise between them, and that either party would be killed as a consequence thereof; that none of its agents or employés was present or participated in said difficulty and altercation, and that its employés could not, by the exercise of the highest degree of care and caution, have prevented the consequences of said difficulty, by reason of the fact that none of its employés were within 20 feet of said parties while they were engaged in said difficulty, and the shot which killed Earlie Hargrove was fired within a very few seconds after the altercation and difficulty began, and sufficient time did not elapse from the time its employés were informed that a difficulty or affray was in progress to the time the shot was fired to enable the employés to reach the place where the difficulty was going on and protect said party; that when they discovered that a difficulty was going on they saw that the parties were struggling over the possession of a drawn pistol, and could not have protected either of said parties or prevented said killing without jeopardizing their own lives, which they were not called upon to

do; that the said B. C. Clark, at the time he entered the compartment or the coach where Earlie Hargrove was riding, was a duly qualified peace officer, to wit, the city marshal of the town of Bastrop, and acting as such officer, and within the scope of his authority, entered said colored compartment for the purpose of investigating and quelling a disturbance then and there, and immediately prior thereto, going on in said coach; that the said B. C. Clark had been informed by a passenger then on said train that a disturbance among some negroes was going on in the negro coach, and acting on said knowledge and information said officer entered said coach for the purpose of investigating and quelling the disturbance; that he so entered said coach upon his own initiative, and without the advice, consent, or approval of any of the defendant's agents or other employés in charge of said train.

The trial in the court below with a jury resulted in a verdict and judgment in favor of plaintiffs for the sum of $2,520.

The evidence shows that on November 7, 1908, the deceased, Earlie Hargrove, his wife, Carrie, and a number of other negroes, were passengers on one of appellant's trains going from Coupeland to Smithville, in Bastrop county. These negroes were all riding in the compartment of the coach set apart to them. There is evidence that the deceased was drunk, or very much under the influence of liquor. He got on the train at Coupeland, which is 27 miles from the town of Bastrop. Shortly after getting on the train he vomited in the aisle of the coach, and when told by the conductor that he would have to "cut that out" or be put off the train, according to the testimony of the conductor, he used violent and profane language and defied him to put him off, and as the conductor was leaving this car to go to another part of the train the deceased remarked: "Damn him; I will kill him if he tries to put me off." There is no evidence that the deceased caused any further disturbance, or that the conductor paid any further attention to him until the car reached the town of Bastrop. At the latter place B. C. Clark, who was city marshal for said town, got on the train to go to Smithville to meet his sister, who was coming from San Antonio. He got on the front end of the coach in front of the one in which the deceased was riding, but there being a number of passengers on the train he had to go to the rear portion of the coach to find a seat. Just as he was preparing to take his seat, a passenger in the seat next to the one he was preparing to occupy remarked that there had been a good deal of disturbance in the rear coach. Clark asked, "What's the nature of it?" and the passenger replied, "Somebody has been taking in the train." Clark then said that he was an officer, and would go back and see what it was. When he got on the platform of the rear coach, he

found the conductor and asked if there had been trouble in that coach, and was told there had been. He then told the conductor that he would go back and see about it. The conductor asked him if he was an officer, and Clark informed him that he was city marshal of Bastrop and asked who it was that had created the disturbance. The deceased, who was sitting three or four seats from the door and could be seen from the platform, was pointed out to Clark by the conductor. Clark did not tell the conductor that he intended to arrest the deceased, and nothing was said from which the conductor could have reasonably anticipated that Clark intended to commit any trespass upon the deceased. The conductor testified that he told Clark he thought the negro was now quiet, and Clark replied, "I will go in and see the negro and quiet him." Clark went into the coach and spoke to the deceased, and in a few moments he and the deceased were struggling for the possession of Clark's pistol, and while so engaged Clark got the muzzle of the pistol against the deceased, or pointed towards him, and fired several shots that gave him fatal wounds from which he died in a short time.

The evidence is conflicting as to what was said and done by Clark and the deceased immediately after Clark got to where the negro was and before the struggle for the pistol began. According to Clark's testimony the deceased was very much intoxicated, and was sitting between two negro women, who were trying to keep him quiet, and when he asked him, "Negro, what is the matter with you?" he replied, "By God, there ain't nothing the matter with me." Clark then told him that he was an officer, and he (the negro) could consider himself under arrest. The negro then said, "By God, show your papers." Clark then reached around the deceased to search for a pistol, and the deceased caught Clark's pistol scabbard, and the struggle for the pistol began with the result before stated. According to the testimony of deceased's wife, Clark made an unprovoked assault upon the deceased and killed him without any cause. The evidence is sufficient to sustain the finding that the arrest of deceased by Clark and the ensuing struggle between him and the deceased occurred while the train was within the corporate limits of the town of Bastrop.

The conductor testified that he did not go into the car with Clark; that he had no occasion to go in there and did not anticipate any trouble. He further testified that he had no opportunity to prevent the shooting of the deceased by Clark. One or two witnesses for plaintiff testified that the conductor entered the car with Clark, and was standing by him when he began the altercation with the deceased, and that he made no effort to protect the deceased.

For the purposes of this opinion, this is a sufficient statement of the evidence.

[1] The first assignment of error complains of the following paragraphs of the charge:

"(3) The law provides that all railroad companies operating passenger trains in this state shall provide on such trains separate coaches or compartments thereof for the use of white and negro passengers, and that conductors in charge of such trains shall not permit passengers of the one race to travel in a coach or compartment designated for the use of the other race; and it is the duty of the conductor to prevent a white man from traveling in a coach or compartment designated for the use of negroes. If a white man, while traveling in a coach or compartment designated for the use of negro passengers, with the knowledge or consent of the conductor in charge of the train, unlawfully kills a negro passenger also in such coach or compartment, the railway company is liable for all damages proximately resulting from such killing.

"(4) If the killing of Earlie Hargrove was not done by the said Clark in defense of himself from some unlawful and violent attack then made, or apparently made or about to be made, upon him by the said Earlie Hargrove, from which the said Clark might reasonably apprehend death or serious bodily injury, then the killing would be unlawful, and the railway company could be liable for such damages as proximately resulted from such killing."

These paragraphs of the charge, in effect, instruct the jury to find for the plaintiff, unless they find from the evidence that Clark killed the deceased in self-defense. They assume that Clark had no right to enter the negro coach in which the deceased was riding, and that the conductor was guilty of negligence or a breach of duty to the deceased in permitting him to enter said coach, and charge the appellant with liability for the damages caused appellees by the death of the deceased, regardless of whether the conductor, if he wrongfully permitted Clark to enter said coach, could have reasonably anticipated that any injury to the deceased would probably result from his failure to prevent Clark from entering the car. This charge should not have been given.

Section 5 of article 1010 of the Penal Code of this state is as follows: "If any passenger upon a train provided with separate coaches shall ride in any coach not designated for his race, after having been forbidden to do so by the conductor in charge of the train, he shall be guilty of a misdemeanor and upon conviction therefor shall be fined not less than five nor more than twenty-five dollars."

Section 9 of said article is as follows: "Conductors of passenger trains provided with separate coaches shall have the author-

ity to refuse any passenger admittance to any coach in which he is not entitled to ride under the provisions of this law, and the conductor in charge of the train shall have authority, and it shall be his duty to remove from a coach any person not entitled to ride therein under the provisions of this act; and upon his failure or refusal to do so shall be guilty of a misdemeanor and upon conviction shall be fined in any sum not less than five nor more than twenty-five dollars."

These provisions of the statute cannot be construed to prohibit a white peace officer, in the discharge of the duties of his office, entering a coach of a railway train set apart for negro passengers, nor to make it a violation of duty on the part of the conductor in charge of the train to permit the officer to enter such coach.

[2] Article 44 of White's Code of Criminal Procedure provides: "It is the duty of every peace officer to preserve the peace within his jurisdiction. To effect this purpose he shall use all lawful means. He shall, in every case where he is authorized by the provisions of this Code, interfere without warrant to prevent or suppress crime. * * * He shall give notice to some magistrate of an offense committed within his jurisdiction, when he has good reason to believe that there has been a violation of a penal law. He shall arrest offenders without warrant in every case where he is authorized by law, in order that they may be taken before the proper magistrate or court and be brought to punishment."

Article 3 of said Code, designating what officers are peace officers, includes city marshals.

As before stated, the evidence is sufficient to sustain the finding that when Clark entered the coach in which the deceased was riding the train was in the corporate limits of the town of Bastrop, and conceding that his general jurisdiction and authority as a peace officer was confined to the corporate limits of said town, if he entered said coach for the purpose of investigating, preventing, or suppressing an offense against the law, he was acting within his jurisdiction and authority. He had been told that there had been a disturbance in that car, and that "somebody had been taking in the train." When he reached the platform on his way back to the car and met the conductor, his information as to the previous disturbance in the car was confirmed. Just at that time it appears that the deceased was quiet, but that fact did not deprive the officer of the right to investigate the previous disturbance and ascertain whether it was necessary to take any steps to prevent its recurrence. The evidence would have authorized the jury to conclude that this was Clark's purpose in entering the car, and if this is true he violated no law in entering it, and it follows that the conductor was under no duty to prevent or oppose his going into the car.

[3, 4] It certainly was not the intention of the separate coach law to erect a barrier against officers in the discharge of their duty. Clark, in the discharge of the duties of his office, had the same right to go into the negro coach as into those set apart for white passengers; both were public places, and it was as much his duty to investigate a violation of the law or to take steps to prevent a disturbance in the one as in the other. But if Clark had no right to enter the car, and the conductor was negligent or failed in his duty in not preventing or opposing his entering it, such negligence or failure of duty on the part of the conductor would not render the appellant liable for the death of the deceased, unless the conductor could have reasonably anticipated that as a result of his failure to prevent Clark from entering the car the deceased or some passenger therein would likely be killed or suffer injury of some kind. The mere unauthorized presence of a white person in a negro car is not a violation of any right of the negro passengers, and would give them no cause of action against the railway company. Norwood v. Railway Co., 12 Tex. Civ. App. 560, 34 S. W. 180. If the conductor could not have reasonably anticipated, when he permitted Clark to enter the car, that he would assault the deceased or commit some act injurious to him, the company would not be liable for the death of the deceased, or for any injury to him, unless the conductor failed in his duty to protect the deceased after he discovered that Clark would probably injure him.

We think plaintiffs' right of recovery in this case depends upon whether or not the conductor, after knowing or having reasonable grounds to believe that Clark would make an unlawful assault upon the deceased, failed to use that high degree of care imposed upon him by law to protect the deceased from injury.

The charge complained of under the third assignment of error repeats and emphasizes the error in the charges above quoted and should not have been given.

We deem it unnecessary to pass upon the other assignments of error presented in appellant's brief. What we have said disposes of the only material errors committed on the trial, and if any error is shown by the remaining assignments it is not such as is likely to occur upon another trial.

For the error in the charge above discussed, the judgment is reversed and the cause remanded.

Reversed and remanded.