Quinn, &c., v. Louisville &. Nashville R. Co.

*CASE 40—PETITION ORDINARY—OCTOBER 31.

# Quinn &c., v. Louisville & Nashville R. Co.

### APPEAL FROM HARDIN CIRCUIT COURT.

|   |   |
|---|---|
| 98 | 231 |
| f104 | 444 |
| 98 | 231 |
| 123 | 219 |
| 98 | 231 |
| 137 | 616 |

RAILROADS—PERMITTING WHITE PASSENGERS TO ENTER COACH FOR COLORED PASSENGERS.—Where the conductor of a railroad train permits a white passenger to enter the coach set apart for colored passengers under the provisions of the separate coach law, or, knowing of his presence there, fails to expel him, the company is liable for his bad conduct affecting the rights of colored passengers while he remains.

In this case in which a colored female passenger sought to recover damages of a railroad company for an insult offered to her by a white man who was permitted by the conductor to remain in the coach for colored passengers, the court should have instructed the jury that if the company permitted the white passenger to enter the coach for colored passengers, or, knowing of his presence there, permitted him to remain, it "is liable in damages for the maltreatment, if any, of the plaintiff, although the conductor may not have been present when the obscene and profane language, if any, was used."

HOBSON & O'MEARA FOR APPELLANT.

1. The law requires the utmost care on the part of the carrier, and he must show that he used diligence, and, notwithstanding this, could not prevent the occurrence. It is not a question of knowledge but of diligence. (Britton v. A. & C. R. Co., 43 Am. Rep., 752 (88 N. C., 536); Schouler on Carriers, sec. 643, p. 643; Freeman's notes to Ingalls v. Bills, 43 Am. Dec., 355; note to M. & L. R. Co. v. Stringfellow, 51 Am. Rep., 602.)

2. It was error to instruct the jury that defendant is not liable unless its servants had knowledge of the fact that the assault was about to be committed. It was negligence upon the part of the conductor to permit Alexander to enter the coach set apart for colored passengers, and as the conduct which followed was what was to be expected under the circumstances, the company is liable therefor.

The failure of any person to perform a duty imposed upon him

*The rights of colored passengers are considered with reference to all the decisions on the subject in a note to ex parte Plessy, (La.), 18 L. R. A. 639.

by a statute or other legal authority, is evidence of negligence. (Shearman & Redfield on Negligence, 4th ed., sec. 13; Bott v. Pratt, 33 Minn., 323; 53 Am. Rep., 47 and note; Seimers v. Eisen, 54 Cal., 418; Bishop on Mun. Contract Law, sec. 125-140.)

W. H. MARRIOTT FOR APPELLEE.

1. The plaintiff's statement that her fellow passenger used insulting language is not sufficient to entitle her to recover. The court and jury must have an opportunity to determine whether the language used or conduct indulged in was such as would be reasonably calculated to injure the feelings, humiliate or insult the passengers on board. There is nothing to show that plaintiff heard the offensive language detailed by one of the witnesses.

2. The company is not responsible for the acts of passengers committed without its knowledge and which it had no reason to anticipate. (Hutchinson on Carriers, sec. 548.)

3. The violation by the company of the separate coach law gives neither white nor colored passengers a right of action, but merely subjects it to indictment and fine.

4. The court properly instructed the jury in effect that the white passenger had the right to remain in the colored compartment long enough to attend to the special business for which he was allowed to enter.

CHIEF JUSTICE PRYOR DELIVERED THE OPINION OF THE COURT.

The appellant, Fannie Quinn, was a passenger on the train of the appellee, being carried from the city of Louisville to her home at Elizabethtown, in this State.

While in the coach assigned her and her race by the company (she being a colored woman), and complying with the regulations of the corporation as well as the statute in regard to separate coaches, she alleges that certain white passengers, in an intoxicated condition, entered the coach to which she had been assigned and the one set apart for the colored race, and whilst in this car used violent, profane, obscene and indecent language in her hearing, such as humiliated her and disturbed the peace of those in the car; that they were permitted to enter this car by the consent of the conductor and against her consent and earnest protest, etc.

The railroad company, by its answer, placed in issue the material facts alleged, and upon hearing the evidence the jury returned a verdict for the defendant, and the principal error relied on for a reversal is the error of the court in the instructions given the jury.

The facts of this case are in substance these: The appellant had been to the city of Louisville attending an educational convention as a delegate, and when returning was assigned to the coach set apart for her race. There were but few passengers in this coach, and the witnesses for the appellant state that the conductor, or some officer of the company similarly uniformed, was in the car and was·appealed to for protection, and his response was: *"They have no business in here, but they will come in."* One of the white men was much intoxicated, and after he had given an aged colored man a drink from his bottle he offered a drink to the appellant, and perhaps laid his hand upon her, at the same time making such profane and indecent remarks as were calculated to humiliate and mortify the appellant as well as other passengers, the language used being heard at the far end of the car. The conductor testifies he was busily engaged in taking up tickets, the cars being crowded, and as he passed through the coach for colored persons saw a white man standing in the aisle talking to a colored man, and said to him: "This is the car for colored people, and you must go out." The reply was: "Yes, Captain, I know that, but I want to speak to this old colored man for a few minutes, and will only be here for a minute or two, and will go out;" and the conductor then proceeded to the other cars, leaving the white man in the coach with his old colored friend. He further stated that he had been instructed by the company to permit white passengers to go into the car set apart for colored people on business, when he had no reason to believe

from their appearance they would misbehave, but would not permit them to ride there as passengers.   The person entering the car was introduced as a witness, and says he was intoxicated, and, seeing his colored friend in the car, stepped in to give him a drink, and corroborates the conductor as to what took place between hmself and that officer.   He does not recollect of using the language  attributed to him; may have used profane language, but nothing more.   That this witness was intoxicated is beyond controversy, and from the uncontradicted testimony  in the case an ordinary observer would have arrived at such a conclusion.

The haste of the conductor in his effort to collect the fares and take up tickets in the other cars accounts no doubt for his failure to observe the condition of the white passenger, and we may assume caused his assent to his remaining longer in the colored compartment.

It is contended by counsel, and upon this idea the instruction below was framed, that if the conductor was otherwise vigilant, and was ignorant of the passenger's condition and his treatment of the colored passenger, no recovery could be had.

Upon the question of knowledge on the part of the railroad officials as to the rude conduct of  the white passenger  the testimony is conflicting.   While the mere presence of the intruder into this coach for colored persons, with the knowledge of  the conductor, would not give  to the occupants a cause of action against the corporation, we can not concur with counsel or the court below that the separate coach law has no application to the facts of this case.   It is not necessary, in order  to  permit a recovery, to show that  the conductor knew of this bad treatment of the colored passenger, or from his condition had the right to anticipate it was the purpose of the intruder to produce trouble.   He should not

be allowed to enter the car, or to remain there after his presence is discovered.

In the transportation of passengers prior to the passage of the separate coach bill the frequent disturbances arising between the two races, resulting often in serious injuries being inflicted by the one on the other, and the danger to other passengers, led to the enactment of this law as a police regulation, in order to prevent, as far as possible, these altercations upon railroad trains, and to check the disposition of those of the dominant race to oppress and humiliáte those who were entitled to the protection of the law. No discrimination is made by the law in favor of the one race or the other, each to have the same facilities as to transportation, as to conveniences and accommodations in the coach to which they are assigned.

In order to make this law the more effectual heavy penalties are imposed on the railroad companies for not having separate coaches, and upon the conductors or those in charge of trains for not assigning to each white or colored passenger his respective compartment. (Kentucky Statutes, sections 797-800.)

If, as we shall assume was the case, each one of the passengers had been assigned the coach required by the statute, and the white passenger had left his coach and gone into the coach with these colored people without the knowledge of the conductor while he was attending to his duties in the other cars, and had there abused and insulted the appellant, it is plain no action could be maintained against the company, but when the white passenger is assigned to the car set apart for those of another race the company will be held responsible for his bad conduct affecting the rights of other passengers, although the conductor may be ignorant of what is transpiring, and where the conductor or those managing

the train know that one is in the wrong car, it is his duty to expel him, and by consenting to his remaining the company becomes responsible for his conduct so long as he does remain.

If a contrary rule is applied and no liability exists on the part of the corporation to the passenger, the separate coach law becomes a dead letter, and those who are entitled to its protection have no means of enforcing its provisions but by indictment, where a penalty may be adjudged in favor of the State.

It is made the duty of conductors, under heavy penalties, to execute this law, and where there is a neglect of duty for which a penalty is imposed, and private injury results from this neglect, a cause of action arises in favor of the person injured. This is the universal rule applicable to such cases, and should be made to apply to the facts of this case.

It may be contended that the white passenger having been assigned to his proper coach, and then leaving it without the knowledge of the conductor, exempts the company from liability unless the conductor knows of the wrongs being committed or the purpose of the passenger, by reason of his conduct, to mistreat passengers. This would perhaps be a rational conclusion unless it further appeared the conductor, or those controlling the train, knew of the white passenger's presence in the colored compartment, and took no steps to require him to leave. Here the conductor assented to his remaining in the car until he dispatched his business with the old negro, and the company should be held responsible for his conduct so long as he remained, and any other construction of the duties of corporations and their agents, arising from the passage of this law, would nullify its provisions or amount to a disregard of the manifest purpose of the legislature in enacting it. It would enable passengers and rail-

road officials to violate this law with impunity, and tend to increase the mischief the statute is intended to prevent.

The court should have told the jury that "the law required the corporation to provide separate coaches or compartments for its white and colored passengers, and if the agents of the corporation permitted the white passenger to enter into the coach set apart for colored passengers, or if the agents or servants, when seeing him in the car, permitted him to remain in the coach, the company is responsible for his subsequent conduct, and liable in damages for the maltreatment, i f any, of the plaintiff, although the conductor may not have been present when the obscene and profane language, if any, was used by the white passenger."

Conductors, or those in charge of passenger trains, are invested with the power to protect those who, for the time being, are under their charge, and when it is shown they have exercised that vigilance that prudent men would exercise for the protection of the passenger, the company is relieved from liability.

The effects of whisky on the white passenger induced him to maltreat the colored woman, and, not only so, but his intoxicated condition must have been apparent to any-one exercising the slightest care for the woman's protection.

The judgment below, for the reasons given, is reversed and remanded for proceedings consistent with this opinion.