TEXAS & P. RY. CO. v. BAKER.    (No. 1535.)*

(Court of Civil Appeals of Texas.    Texarkana.
Dec. 30, 1915.    On Motion for Re-
hearing, Jan. 27, 1916.)

1. CARRIERS 283(2)—CARRIAGE OF PASSEN-
GERS—VIOLATION OF SEPARATE COACH LAW
—STATUTE.

Under Vernon's Sayles' Ann. Civ. St. 1914,
art. 6753, providing that conductors shall have
authority to refuse any passenger admittance to
any coach or compartment in which he is not
entitled to ride under the provisions of the sepa-
rate coach law (Vernon's Sayles' Ann. Civ. St.
1914, arts. 6746–6753), that it shall be his duty
to remove from a car any passenger not entitled
to ride therein, and that, upon his refusal to do
so knowingly, he shall be punished, a railroad
is not relieved of liability for the consequences to
a passenger of its conductor's failure to separate
white and negro passengers; the duty being im-
posed upon the conductor as such.

[Ed. Note.—For other cases, see Carriers,
Cent. Dig. §§ 1121, 1122; Dec. Dig. 283(2).]

2. CARRIERS 283(2)—CARRIAGE OF PASSEN-
GERS—VIOLATION OF SEPARATE COACH LAW
—LIABILITY OF ROAD—STATUTE.

Where the servants of a railroad knew, or
by the exercise of due care might have known,
that a white man was in a negro coach, in vio-
lation of the separate coach law, and was negli-
gent in not removing such white person from
the coach, the road was liable for injuries in-
flicted by him upon a negro passenger.

[Ed. Note.—For other cases, see Carriers,
Cent. Dig. §§ 1121, 1122; Dec. Dig. 283(2).]

3. APPEAL AND ERROR 548(5)—PRESERVA-
TION OF EXCEPTIONS—RULING ON EVIDENCE.

To take advantage on appeal of the wrong-
ful admission of evidence over objection, a bill of
exceptions, duly approved by the trial court,
must have been preserved.

[Ed. Note.—For other cases, see Appeal and
Error, Cent. Dig. § 2436; Dec. Dig. 548(5).]

On Motion for Rehearing.

4. CARRIERS 284(1)—CARRIAGE OF PASSEN-
GERS—INJURY TO PASSENGER—LIABILITY OF
ROAD.

A railroad whose white passenger assaulted
plaintiff's negress wife was not liable therefor,
aside from the separate coach law, unless the
road should have reasonably foreseen, in time
to have prevented the assault, that the white
person would commit it.

[Ed. Note.—For other cases, see Carriers,
Cent. Dig. §§ 1125, 1127; Dec. Dig. 284(1).]

5. APPEAL AND ERROR 1064(1)—HARMLESS
ERROR—INSTRUCTION.

In an action against a railroad for injuries
to a negress, passenger in a coach for blacks,
when a white passenger therein assaulted her,
where it conclusively appeared that one of
the road's employés knew that white men were
in the coaches for blacks, error in an instruction
that under the separate coach law, the road owed
the duty to exercise a high degree of care to dis-
cover that white passengers were in the negro
coach was harmless.

[Ed. Note.—For other cases, see Appeal and
Error, Cent. Dig. § 4219; Dec. Dig. 1064(1).]

6. CARRIERS 321(4)—CARRIAGE OF PASSEN-
GERS—VIOLATION OF SEPARATE COACH LAW
—INSTRUCTION.

In an action against a railroad under the
separate coach law for injuries suffered by plain-
tiff's wife, a negress, riding in a coach for blacks,
when assaulted by a white person therein, in-
structions authorizing a finding against the road

if "its agents and servants" knew that a white
passenger was in the negro coach, were not er-
roneous because of testimony that an employé
of the road in no way connected with the opera-
tion of the train was on it at the time of the as-
sault, where such employé's testimony was that
he had been an employé, but was not working
the day of the assault, and at the time of the
trial, three years later, was still an employé.

[Ed. Note.—For other cases see Carriers,
Dec. Dig. 321(4).]

Hodges, J., dissenting.

Appeal from District Court, Red River
County; Ben H. Denton, Judge.

Suit by Archie Baker against the Texas &
Pacific Railway Company. From a judgment
for plaintiff, defendant appeals. Affirmed.

See, also, 158 S. W. 263.

Appellee's wife, a negress, while a passen-
ger on a coach assigned to negroes in one of
appellant's trains, was assaulted with a whis-
ky bottle and severely injured by a white
passenger named Melton then in said coach
in violation of the "separate coach law."
Articles 6746 to 6753, Vernon's Statutes. On
a former appeal of the case a judgment in
favor of appellant was reversed because of
error of the trial court in excluding certain
testimony offered by appellee. On that trial
the court below, in effect, as stated in the
opinion reversing the judgment, instructed
the jury to find for appellee—

"if they believed his wife was assaulted and in-
jured as alleged in his petition and further be-
lieved that such assault might reasonably have
been anticipated and guarded against by ap-
pellee's (appellant's) employés in charge of the
train by the exercise of a high degree of care
on their part, unless they believe that appellant's
(appellee's) wife used insulting words to Melton
which were calculated to and did provoke him to
assault her, and that in using such words she
was guilty of negligence, in which event they
should find for appellee (appellant)."

With reference to such instruction this
court, in remanding the case, said:

"In view of the allegations in the petition re-
ferred to, the testimony, and the statute from
which we have quoted, we think the court, in-
stead of instructing the jury as he did, should
have told them, in effect, to find for appellant
(appellee) if they believed appellee (appellant)
knew, or in the exercise of the high degree of
care it owed to his wife should have known, that
Melton and his companions were in the coach as-
signed to negroes, unless they also believed that
appellant's (appellee's) wife by her own wrong-
ful conduct towards Melton provoked him to as-
sault her, and that but for such conduct on her
part he would have not assaulted her."

On the trial resulting in the judgment in
appellee's favor for the sum of $500 as the
damages he was entitled to recover of appel-
lant, from which this appeal is prosecuted,
the pleadings and testimony were not mate-
rially different from what they were on the
other trial, and, having been sufficiently stat-
ed in the opinion disposing of the former ap-
peal, which will be found in 158 S. W. 263,
will not be restated here.

On the last trial the court instructed the
jury as follows:

---

"If you believe from the evidence that plaintiff's wife, while she was a passenger on one of defendant's passenger trains at the time and place alleged in plaintiff's petition, was assaulted by a fellow passenger and injured as substantially set out in plaintiff's petition, and if you further believe that such assault was committed by a white passenger which defendant, its agents and servants, knew, or in the exercise of that high degree of care required by law might have known, was in the coach assigned to negroes, then, if you so find, you will find a verdict for the plaintiff and assess his damages in accordance with instructions hereinafter given you, unless you find for the defendant upon subsequent instructions contained in this charge.

"(4) On the other hand, if you find from the evidence that the defendant, its agents and employés, did not know of the presence of such white passengers in the coach assigned to negroes, and that by the exercise of the high degree of care required by law they could not know it, then you will return a verdict for the defendant."

The testimony was sufficient to support findings involved in the verdict and judgment, and therefore we find: (1) That appellee's wife was a negress; (2) that without fault on her part, while she was a passenger in a coach assigned to negroes in one of appellant's trains, she was wrongfully assaulted and severely injured by one Melton, a white man, who was then unlawfully in said coach; (3) that appellant's agents and employés in charge of the train knew, or, if they did not, had they exercised due care would have known, that said Melton was in said coach; (4) that, knowing, or being chargeable with knowledge, that said Melton was in said coach, appellant's said agents and employés were guilty of negligence in failing to remove him therefrom; and (5) that appellee, as the result of such injury to his wife, suffered damages in the sum found by the jury.

Geo. Thompson, of Dallas, and Head, Dillard, Smith, Maxey & Head, of Sherman, for appellant. Chambers & Black, of Clarksville, for appellee.

WILLSON, C. J. (after stating the facts as above). It is insisted that the third and fourth paragraphs (set out in the statement above) of the trial court's charge to the jury were erroneous—

"in that in said charge liability is imposed upon the defendant if it knew, or in the exercise of a high degree of care could have known, of the presence of white passengers in the colored coach, in that said charge makes a violation of the separate coach law as applied to a case of this kind negligence per se, and makes a violation of the separate coach law the proximate cause of plaintiff's wife's injuries without reference to whether or not defendant could have anticipated and prevented the assault."

It was not contended by appellee that appellant had failed to comply with the provision in the "separate coach law" which required it to provide separate coaches and compartments for the accommodation of white and negro passengers. The contention was that appellant, having complied with the requirement of the law in that respect, failed

to comply with the provision thereof in article 6753, Vernon's Statutes, which required it to remove therefrom white passengers it unlawfully permitted to enter the coach it had provided for negro passengers. Said article 6753 is as follows:

"Conductors of passenger trains, street cars, or interurban lines, provided with separate coaches, shall have authority to refuse any passenger admittance to any coach or compartment in which they are not entitled to ride under the provisions of this law; and the conductor in charge of the train or street car, or interurban car, shall have authority, and it shall be his duty, to remove from a coach or street car, or interurban car, any passenger not entitled to ride therein under the provisions of this chapter, and upon his refusal to do so knowingly shall be punished as provided in the Penal Code of this state."

[1] The fact that the duty of enforcing a compliance with the requirement of the law was imposed upon its conductor did not relieve appellant of liability for the consequences to a passenger of a failure to separate white and negro passengers. The duty was imposed upon the conductor as such and not otherwise. Railway Co. v. Ritchel, 148 Ky. 701, 147 S. W. 413, 41 L. R. A. (N. S.) 958, Ann. Cas. 1913E, 517. In the case cited the Supreme Court of Kentucky, with reference to a statute not materially different from our own, said:

"The whole purpose of the separate coach law is to require a carrier not only to provide separate coaches for colored and white passengers, but to see that the law is made effective by assigning the passengers to the coaches to which they belong. While it is true that the statute imposes a penalty on the conductor for a failure of duty in this respect, this in no wise relieves the carrier of its responsibility under the law. In making the conductor liable to a fine for failure of duty, the purpose of the lawmakers was to render the act more effective. The duty of assigning passengers to the proper coaches is not imposed upon the conductor individually, but is imposed upon him as the conductor of the train. In other words, it is only because of the position that he occupies that the statute imposes upon him a penalty for a failure of duty. In executing the statute, or in failing to execute it, he acts as the agent or the representative of the railroad company, and the doctrine of respondeat superior necessarily applies."

[2] If, as unquestionably was true under the circumstances shown by the testimony, it was a violation of law for Melton and his companions to be in the negro coach, and if, as seems to us to be true, appellant owed to appellee's wife the duty to see to it that the law was not so violated, then it follows, we think, that appellant was guilty of negligence in not removing Melton from the coach, if its agents and servants in charge of the train knew, or by the exercise of the care it owed to appellee's wife as a passenger they might have known, he was in the coach. Therefore we are of opinion the trial court did not err when he instructed the jury to that effect. It is clear Melton would not have been in the negro coach had appellant, in compliance with the requirement of the law, refused to admit him thereto, or, having unlawfully admitted, had removed him there-

from; and it is clear if Melton had not been in the coach appellee's wife would not have suffered the injury inflicted upon her. When it is remembered that the main object the Legislature had in view in enacting the separate coach law was to prevent "the frequent disturbances [upon railroad trains] arising between the two races, resulting often in serious injuries being inflicted by the one or the other" (Quinn v. Railway Co., 98 Ky. 231, 32 S. W. 742), we think it should be held that the trial court had a right to tell the jury, as he did in effect in the instructions complained of, that appellant should have anticipated the consequences which resulted to appellee's wife from its failure to comply with the law.

"Where the conductor or those managing the train," said the court in the case cited above, "knows that one is in the wrong car, it is his duty to expel him, and, by consenting to his remaining, the company becomes responsible for his conduct so long as he does remain."

We do not think the conclusions we have reached are in conflict with those reached in the cases cited by appellant. The point decided in Railway Co. v. Brown, 158 S. W. 259, was that it was not a violation of the separate coach law for a city marshal in the discharge of his official duties to go into a negro coach within the city limits. The point decided in Norwood v. Railway Co., 12 Tex. Civ. App. 560, 34 S. W. 180, was that a negro passenger who failed to show that he was thereby damaged was not entitled to recover against a railroad company because of its failure to provide for his color a coach "equal in all points of comforts and convenience" to the one provided for the white passengers. In Segal v. Railway Co., 35 Tex. Civ. App. 517, 80 S. W. 233, the plaintiff, a white woman, while a passenger in a coach provided for white persons, was assaulted by a negro. The negro was not a passenger, and the court properly, we think, held that the separate coach law was inapplicable to the case. In Prokop v. Railway Co., 34 Tex. Civ. App. 520, 79 S. W. 101, the plaintiff, a white woman and a passenger, while in the waiting room of the defendant's depot, was assaulted by a negro. The point decided was that the failure of the railway company to have the waiting room lighted was not the proximate cause of the injury to the plaintiff. In Railway Co. v. Smith, 133 S. W. 695, where the plaintiff, a woman, while in the waiting room of the defendant's depot was injured by boys engaged in a scuffle, it was held, on the authority of the Prokop and Segal Cases, that the absence of the defendant's station agent from the depot at the time the accident occurred was not the proximate cause of the injury to the plaintiff.

[3] What has been said disposes of all the assignments in appellant's brief, except the fourth, in which complaint is made of the action of the trial court in overruling an objection thereto and in admitting as evidence certain testimony of the witness John Jackson. As the bill of exceptions taken to the ruling made does not appear to have been approved by the court, his action cannot be reviewed here. Railway Co. v. Crump, 110 S. W. 1013.

The judgment is affirmed.

Associate Justice HODGES thinks the charge complained of was erroneous and dissents from the conclusion reached. He is of the opinion the judgment should be reversed.

On Motion for Rehearing.

WILLSON, C. J. [4, 5] If, as appellant insists is true, its liability should have been determined without reference to the "separate coach statute," the view this court has heretofore taken of the law applicable to the case was erroneous, and the instructions to the jury in accordance with that view were wrong. For the rule applicable, if that statute should have been ignored, would have relieved it of liability, unless it appeared that appellant reasonably should have foreseen in time to have prevented it that Melton would assault appellee's wife; and the jury should have been so advised. 4 Elliott on Railroads, § 1639. We are still of opinion, after further consideration, that the statute was a part of the law of the case; and a majority of the court are still of opinion that, because it was applicable, the instructions to the jury were not erroneous. 3 Thompson on Negligence, § 3098. As we construe the statute, it imposed on appellant duties it did not before its enactment owe to its passengers, to wit, to provide separate coaches for the races and to see to it that white and negro passengers were separated into the coaches provided for them respectively. If by force of the statute appellant owed the duty to see that passengers were so separated, then it was bound to use a high degree of care to discharge it, and became liable for the consequences proximately following to appellee's wife from its failure to exercise that degree of care. If, in the exercise of that degree of care, it would have ascertained that Melton was in the negro coach and have removed him therefrom, and did not, then it seems to us it necessarily follows that its failure to discharge the duty must have been the proximate cause of the injury to appellee's wife, if she was herself without fault. For, when the purpose of the Legislature in enacting the statute is kept in mind, we think appellant should not have been heard to say that it reasonably could not have foreseen that Melton would assault appellee's wife as he did. It was mainly to prevent such outrages as the one perpetrated upon appellee's wife that the statute was enacted, and appellant should be held to have known it. It is plain that had it discharged the duty and not permitted white passengers to enter the negro coach, or

had it promptly removed them when its employé Stanley found them in that coach, appellee's wife would not have been assaulted as she was. The injury to her, therefore, was the direct result of a failure on the part of appellant to discharge a duty it owed to her, and the most it could contend for in the circumstances was that it should not be held liable for the consequences of its omission, because it could not reasonably have anticipated that such consequences would follow. As stated above, we think it should be held to have anticipated consequences the statute was enacted to prevent. If, however, the conclusion reached by us that it was not error to tell the jury that appellant owed to appellee's wife the duty to exercise a high degree of care to discover that white passengers were in the negro coach is wrong, we nevertheless would be of opinion the judgment should not be reversed for the error in the instructions; for it conclusively appeared that at least one of its employés (the witness Stanley) assisting as porter in the operation of the train knew that white men were in the negro coach before the assault on appellee's wife was committed. Stanley, testifying as a witness for defendant, said: "I left some white men in the colored coaches, and went on back to the end of the train."

[6] The contention in the motion that the instructions were erroneous because same authorized a finding against appellant if "its agents and servants" knew that a white passenger was in the negro coach is based on a claim that the testimony showed that its employé John Harris, in no way connected with its operation, was on the train. As we understand the record, it did not show that. Harris testified that he had been an employé of appellant, but was not working that day, and that at the time of the trial, more than three years later, he was still an employé of appellant. If there is any other testimony in the record with reference to his being an employé, we have not found it.

The motion is overruled.

HODGES, J. (dissenting). The court gave as a part of his main charge the following:

"If you believe from the evidence that the plaintiff's wife, while she was a passenger on one of defendant's passenger trains, at the time and place alleged in plaintiff's petition, was assaulted by a fellow passenger and injured as substantially set out in plaintiff's petition, and if you further believe that such assault was committed by a white passenger which defendant, its agents and servants, knew, or in the exercise of that high degree of care required by law might have known, was in the coach assigned to negroes, then if you so find you will find a verdict for the plaintiff and assess his damage in accordance with instructions hereinafter given you, unless you find for the defendant upon subsequent instructions contained in this charge."

I cannot agree to the unqualified approval of this charge which is given by the majority of this court. It is true that on the former appeal language was used in the opinion reversing the case which justified the trial court in so instructing the jury, and I accept the full share of my responsibility for what was there said. The language which authorized this charge was dicta, and not binding on the trial court had he felt inclined to disregard it. However, he had the right to assume that this court would adhere to that holding on another appeal. The best time to correct an error is at the first opportunity, and it is for that reason that I now express my dissent from the holding of the majority on this appeal.

The vice of the charge consists in making the railroad company liable if "its agents and servants * * * in the exercise of that high degree of care required by law might have known" that the white passenger who committed the assault complained of was in the coach assigned to negroes. The liability of the appellant in this case rests solely upon the ground that its conductor violated the provisions of the separate coach law. For it cannot be said that the employés in charge of the train had any notice of conditions which would have made the appellant liable for the assault committed in the absence of this statute. Article 1523 of the Penal Code 1911 (Vernon's Ann. Pen. Code 1916, art. 1523) requires railroad companies to provide separate coaches for white and negro passengers, and prescribes a penalty for a failure to make such provision. Subdivision 9, which is section 9 of the original act (Acts 22d Leg. c. 41), is as follows:

"Conductors of passenger trains, street cars or interurban lines, provided with separate coaches, shall have the authority to refuse any passenger admittance to any coach or compartment, in which they are not entitled to ride under the provisions of this law; and the conductor in charge of the train or street car or interurban car shall have authority and it shall be his duty, to remove from a coach or street car, or interurban car, any passenger not entitled to ride therein, under the provisions of this law, and, upon his refusal to do so knowingly, shall be guilty of a misdemeanor, and, upon conviction shall be fined in any sum not less than five or more than twenty-five dollars."

When the separate coach law was enacted in 1891 the word "knowingly" was not in the section quoted. It was added by an amendment in 1907. See Acts of 1907, p. 59. This amendment was evidently made for the purpose of restricting the penal liability of conductors for a failure to remove passengers from railway coaches set apart for the opposite race to those instances where the conductors knew, or at least had good reason for believing, that a passenger was in the wrong coach. If the amendment does not authorize that construction, it fails to make any material modification of the law. This is a penal statute, and until it is violated by the conductor there can be no civil liability on the part of the railway company responsible for his conduct; or, to state it differently, a failure to remove a passenger, under circumstances which do not expose

the conductor to a criminal prosecution, cannot form the basis of a civil suit for damages against his principal. It is only that which the statute condemns as a crime that can be treated as a civil wrong. The court cannot, as a matter of law, denounce that as negligence which the statute does not denounce as criminal. The question then is: Does the conductor subject himself to a criminal prosecution for failing to remove a passenger when he does not know that such passenger is in the wrong coach? An indictment or a complaint under this law which merely charged that the conductor might have known that the passenger was in the wrong coach would be defective because of the failure to state the essential facts required to constitute an offense. If such facts are insufficient to support an indictment against the agent, for the same reason they create no civil liability on the part of the principal. To say that failure to protect a passenger against an assault is the breach of the contract of carriage does not alter the situation. It is the statute which imposes the duty to take the precaution for keeping passengers separated; and the court cannot declare as a matter of law that the contract is breached, except upon facts which show that the statute is violated.

The cases cited in support of the charge are Kentucky decisions, and are based upon a statute very similar to ours. But those decisions do not sustain the legal proposition embodied in this charge. In those cases where the railway company was held liable for the failure to remove the passenger the conductor knew of the passenger's presence in the wrong car, and knowingly permitted him to remain. Quinn v. L. & N. Ry. Co., 98 Ky. 231, 32 S. W. 742, was a suit by a negro woman against the railroad company for damages sustained by her by reason of a drunken white man being permitted to remain in the coach set apart for colored passengers. The court in that case said:

"If, as we shall assume was the case, each one of the passengers had been assigned the coach required by the statute, and the white passenger had left his coach and gone into the coach with these colored people without the knowledge of the conductor while he was attending to his duties in the other cars, and had there abused and insulted the appellant, it is plain no action could be maintained against the company, but when the white passenger is assigned to the car set apart for those of another race the company will be held responsible for his bad conduct affecting the rights of other passengers, although the conductor may be ignorant of what is transpiring, and, where the conductor or those managing the train know that one is in the wrong car, it is his duty to expel him, and by consenting to his remaining the company becomes responsible for his conduct so long as he does remain. If a contrary rule is applied, and no liability exists on the part of the corporation to the passenger, the separate coach law becomes a dead letter, and those who are entitled to its protection have no means of enforcing its provisions but by indictment, where a penalty may be adjudged in favor of the state. It is made the duty of conductors, under heavy penalties, to execute this law, and, where there is a neglect of duty for which a penalty is imposed, and private injury results from this neglect, a cause of action arises in favor of the person injured. This is the universal rule applicable to such cases, and should be made to apply to the facts of this case. It may be contended that the white passenger having been assigned to his proper coach, and then leaving it without the knowledge of the conductor, exempts the company from liability unless the conductor knows of the wrongs being committed or the purpose of the passenger, by reason of his conduct, to mistreat passengers. This would, perhaps, be a rational conclusion, unless it further appeared the conductor, or those controlling the train, knew of the white passenger's presence in the colored compartment, and took no steps to require him to leave. Here the conductor assented to his remaining in the car until he dispatched his business with the old negro, and the company should be held responsible for his conduct so long as he remained."

Here the court made the civil liability of the railway company depend upon the failure of the conductor to act after an actual knowledge of the situation. I know of no case which holds to the contrary.

The testimony is undisputed that Melton, the assailant of the appellee's wife, when he boarded the train, went with a companion into the coach assigned to white passengers, and that they afterwards went forward into the negro coach. While the porter testified that there were some white men still in the negro coach as he passed through going to the rear of the train, he does not identify them as Melton and his party. The evidence shows that the train on that occasion carried seven coaches, four of which were assigned to white people, and three to negroes, and that all of them were full. The conductor testified that he took up 756 tickets from those who got on at Paris, and that he was unable to go through the train before reaching the next station without having the engineer to slacken its speed. The testimony also indicates, but does not clearly show, that it was during that time that Melton and his party went into the negro coach. Some of the witnesses say that Melton and his companions were in the negro coach as the conductor went through taking up tickets. This is, in effect, denied by the conductor, who said that he did not notice any white people in the negro coaches. I am inclined to think that the great preponderance of the testimony tended to show that the conductor saw Melton in the negro coach, but it is not entirely satisfactory to say that the court could have assumed that fact as conclusively established. Yet it is very improbable that a different verdict would have been returned had the court omitted the language I have objected to. I am not therefore disposed to protest as much against the result of the decision of the majority as against the proposition of law upon which they rest their conclusion. I do not believe that ruling should stand as a precedent to be followed by other trial courts in the future.