## TEXAS & P. RY. CO. v. BAKER. (No. 2926.)

### (Commission of Appeals of Texas, Section A. Nov. 5, 1919.)

**1. CARRIERS ☞284(1)—LIABILITY; ASSAULT BY FELLOW PASSENGER.**

Under the common law a carrier is bound to exercise the established degree of care to guard its passengers against assaults and other unlawful acts of fellow passengers; but the knowledge of the existence of the danger, or of facts or circumstances from which danger may be reasonably anticipated, is necessary to fix a liability, the duty to exercise the requisite degree of care not arising until there is such knowledge.

**2. NEGLIGENCE ☞6—BREACH OF DUTY IMPOSED BY STATUTE.**

A breach of duty imposed by statute resulting in an injury of the character which the statute sought to prevent to one for whose advantage it was enacted constitutes negligence without reference to the degree of care exercised.

**3. CARRIERS ☞284(1)—EVIDENCE; SEPARATE COACH LAW.**

There can be no violation of the Separate Coach Law, § 9, as amended by Acts 30th Leg. c. 36, § 9, in the absence of actual knowledge that a white or colored person was in the wrong compartment, and the knowledge must be that of the conductor of the train, and not the porter, brakeman, or any other employé.

**4. CARRIERS ☞284(1)—LIABILITY; ASSAULT BY PASSENGER.**

Under Separate Coach Law, § 9, as amended by Acts 30th Leg. c. 36, § 9, a negro cannot recover damages from a carrier by reason of an assault by a white person riding in the coach set aside for negroes, unless it is shown that the conductor of the train had actual knowledge of the presence of the white passenger in the negro coach in time to have avoided the assault resulting in the injury.

Error to Court of Civil Appeals of Sixth Supreme Judicial District.

Action by Archie Baker against the Texas & Pacific Railway Company. From a judgment of the Court of Civil Appeals (184 S. W. 664) affirming a judgment in favor of plaintiff, the defendant brings error. Reversed and remanded.

See, also, 158 S. W. 263.

George Thompson, of Ft. Worth, and Head, Dillard, Smith, Maxey & Head, of Sherman, for plaintiff in error.

Chambers & Black, of Clarksville, for defendant in error.

SONFIELD, P. J. Action in damages by defendant in error for personal injuries sustained by his wife through the negligence of plaintiff in error. Trial to a jury resulted in a verdict and judgment in favor of defendant in error, which on appeal was affirmed by the Court of Civil Appeals. 184 S. W. 664.

Defendant in error's wife, a negress, while a passenger occupying a seat in the coach, assigned to negroes on one of plaintiff in error's passenger trains, was assaulted and severely injured by one Melton, a white passenger, then in the coach assigned to negroes.

Defendant in error alleged as one of the grounds upon which recovery was sought that plaintiff in error was negligent in permitting Melton, a white man, to ride in the coach assigned to negroes in violation of law; that it was the duty of the conductor of plaintiff in error to remove Melton from the coach, which he failed to do, although he knew, or by the exercise of that degree of care required by law could have known, of his presence in said coach.

On the trial of the case the court instructed the jury, in part, as follows:

"If you believe from the evidence that plaintiff's wife, while she was a passenger on one of defendant's passenger trains at the time and place alleged in plaintiff's petition, was assaulted by a fellow passenger and injured as substantially set out in plaintiff's petition, and if you further believe that such assault was committed by a white passenger which defendant, its agents and servants, knew, or in the exercise of that high degree of care required by law might have known, was in the coach assigned to negroes, then, if you so find, you will find a verdict for the plaintiff and assess his damages in accordance with instructions hereinafter given you, unless you find for the defendant upon subsequent instructions contained in this charge.

"(4) On the other hand, if you find from the evidence that the defendant, its agents and employés, did not know of the presence of such white passengers in the coach assigned to negroes, and that by the exercise of the high degree of care required by law they could not know it, then you will return a verdict for the defendant."

Plaintiff in error complains that the instruction makes a violation of the separate coach law, as applied to a case of this character, negligence per se, and the proximate cause of the injuries of defendant in error's wife, without reference to whether or not plaintiff in error could have anticipated and prevented the assault; that the charge is based on the separate coach act, which is without application in this case, but, if applicable, the instruction places a greater burden on plaintiff in error than is warranted by the act.

Under what is known as the "Separate Coach Act," it is made the duty of railroad companies, under penalty, to provide separate coaches or compartments for the accommodation of white and negro passengers. The act imposes a penalty upon a passenger riding in any coach not designated for his race, after

having been forbidden to do so by the conductor.

Section 9 of the original act, Acts 22d Legislature, p. 44, reads as follows:

"Conductors of passenger trains provided with separate coaches shall have the authority to refuse any passenger admittance to any coach in which he is not entitled to ride under the provisions of this act, and the conductor in charge of the train shall have the authority, and it shall be his duty to remove from a coach any passenger not entitled to ride therein under the provisions of this act. And upon his failure or refusal to do so, shall be guilty of a misdemeanor, and upon conviction shall be fined in any sum not less than five, and not more than twenty-five dollars."

Section 9 of the Amendatory Act, Acts 30th Legislature, p. 58, with reference to railroads, in force now and at the date of the trial, reads as follows:

"Conductors of passenger trains * * * provided with separate coaches shall have the authority to refuse any passenger admittance to any coach or compartment in which they are not entitled to ride under the provisions of this law, and the conductor in charge of the train * * * shall have authority, and it shall be his duty, to remove from a coach * * * any passenger not entitled to ride therein under the provisions of this act, and upon his refusal to do so knowingly shall be guilty of a misdemeanor, and upon conviction shall be fined in any sum not less than five or more than twenty-five dollars."

We cannot agree with plaintiff in error that the act is without application in this case, nor do we find ourselves in agreement with the majority of the Court of Civil Appeals in the construction of the act.

[1] Under the common law the carrier is bound to exercise the established degree of care to guard its passengers against assaults and other unlawful acts of fellow passengers. Knowledge of the existence of the danger, or of facts or circumstances from which danger may be reasonably anticipated, is necessary to fix liability; because, unless and until there is this knowledge, the duty to exercise the requisite degree of care does not arise.

The act under consideration was intended for the protection of passengers, white and negro alike. The Legislature deemed the segregation and separation of the races necessary in order to the prevention of conditions likely to provoke unlawful acts. It can hardly be doubted that the statute rests upon "the necessity for the preservation of order and decorum and to prevent contact and collision arising from natural and well known repugnances." Note 11 L. R. A. (N. S.) 268; Quinn v. Ry., 98 Ky. 231, 32 S. W. 743.

[2] A duty being imposed by statute, a breach thereof, resulting in an injury, of the character which the statute sought to prevent, to one for whose advantage it was enacted, itself constitutes negligence without reference to the degree of care exercised, or of reasonable anticipation of an injury. The performance of the duty does not depend upon, nor is it controlled by, surrounding circumstances. One breaching a statutory duty cannot be heard to say that its breach was consonant with any degree of care. The statute itself charges one that its violation will result in an injury of the character sought to be prevented in its enactment. Thompson Negligence (2d Ed.) § 10; 20 R. C. L., 38; S. A. & A. P. Ry. Co. v. Bowles, 88 Tex. 634, 32 S. W. 880; Terre Haute & I. R. Co. v. Voelker, 129 Ill. 540, 22 N. E. 20.

As said by the court in S. A. & A. P. Ry. Co. v. Bowles, supra, in discussing the breach of a statutory duty:

"When the employés of a railway company fail to obey the statute in its plain and mandatory provisions, from which failure injury arises to person or property, there being no contributory negligence by the injured party, the railroad must be held responsible for the consequences of such negligence, without regard to the question as to whether the act was prudent or imprudent; being contrary to the statute, it is unlawful, and therefore, by law, it is negligence."

The court in effect instructed the jury that the statute was violated if the assault "was committed by a white passenger which the defendant, its agents and servants, knew, or in the exercise of that high degree of care required by law might have known, was in the coach assigned to negroes."

[3] We think the charge erroneous in two particulars. There was no violation of the statute in the absence of actual knowledge, and the knowledge, must be that of the conductor of the train.

Under the original act, the duty to remove finds expression in a clause separate and distinct from that creating the penal offense. The conductor is declared guilty of a misdemeanor "upon his failure or refusal" to remove the passenger. The duty to remove was imperative, and an offense resulted, not only upon a refusal, but upon a mere failure to so remove.

In the amendatory act the duty is imposed in the same language, but the duty imposed and offense created are intimately connected, forming a part of the same clause. There is a radical change in the phrasing of the offense pronounced against. In the original act, as we have seen, the conductor was guilty "upon his failure or refusal." In the amendatory act the word "failure" is omitted, and the "refusal" qualified and limited by the addition of the word "knowingly." Under the act as amended, the conductor is criminally liable "upon his refusal to do so (remove the passenger) knowingly." It was clearly the intention of the Legislature to

impose a duty and make its violation a misdemeanor, the duty being the removal by the conductor of a passenger known to him to be occupying a car or compartment set aside to the other race. The duty imposed and the offense created are predicated upon actual knowledge. To this effect are the cases construing a somewhat similar statute. Quinn v. Louisville & N. R. Co., 98 Ky. 231, 32 S. W. 742; Bailey v. Louisville & N. R. Co., 44 S. W. 105, 19 Ky. Law Rep. 1617; Hale v. Chesapeake & O. R. Co., 142 Ky. 835, 135 S. W. 398; Louisville & N. R. Co. v. Renfro, 142 Ky. 590, 135 S. W. 266, 33 L. R. A. (N. S.) 133.

This action is based upon a breach of a duty imposed by statute, or on the theory that a breach of the duty was negligence as a matter of law. Thus basing his right of action, it devolved upon plaintiff to establish the breach. The duty under the statute is imposed upon the carrier through one specified agent or servant. It is made the duty of the conductor to assign passengers to the proper coach and to remove any passenger from a coach in which he has no right to ride under the terms of the act. For a failure to remove such passenger, the conductor alone is punishable. It is a fact, doubtless well known to the Legislature, and generally, that all passenger trains within the state have brakemen, and nearly, if not all, have porters, upon whom devolve the duty of assisting the conductor in looking after the comfort and protection of the passengers; they being under the control and direction of the conductor. The Legislature could have made it the duty of the carrier, its servants and agents, to enforce the provisions of the statute. It could have imposed the duty of removal upon the conductor, brakeman, and porter, or could have made it the duty of the brakeman and porter to inform the conductor of any violation. But the Legislature did not thus provide. It charges no servant or agent of the carrier, other than the conductor, with any duty in connection with the assignment of passengers to the proper coaches, or the removal of a passenger occupying the wrong coach. This failure was hardly the result of inadvertence. It is evident that in imposing the duty upon the conductor, and excluding any other servant or agent, it was intended that liability under the statute should arise only through a failure to enforce the same by the conductor. The statute cannot be enlarged so as to create liability on the part of plaintiff in error for an act or omission of a servant or agent upon whom no duty devolves under the statute. Louisville & N. R. Co. v. Renfro, supra. If the brakeman or porter, or both,

of the plaintiff in error's train, had knowledge of the presence of the white passenger in the negro coach, such information should have been imparted to the conductor; but failure to communicate their knowledge to the conductor, and the conductor being without actual knowledge of such presence, there would be no violation of the statute, and failure to remove him therefrom would not be negligence as a matter of law. We are of opinion that the charge was erroneous in not limiting the issue of knowledge of the presence of the white passenger in the coach assigned to negroes to the conductor of plaintiff in error's train.

We think the charge erroneous in failing to instruct that in order to liability it must be found that the injury was the result of the negligent act. It is unquestionably true that, but for the presence of the white passenger in the negro coach, there would have been no assault. The evidence establishes beyond doubt the causal connection between the negligent act and the injury in this respect. But giving full effect to a finding by the jury under a proper charge that the conductor had actual knowledge of the presence of the white passenger in the negro coach, there would yet be lacking an essential element of actionable negligence. Was this knowledge acquired in time to have prevented the assault? If such knowledge was acquired at the very time of, or subsequent to, the assault, the assault would not be the result of a failure on the part of the conductor to perform the duty. The duty did not arise until there was knowledge of the presence of the white passenger in the negro coach. The duty may then have arisen after the injury was inflicted or at a time when the injury could not have been prevented through a removal of the passenger.

[4] Summing up what has been said with reference to the charge, which was based entirely upon the statute, we conclude that the court should have conditioned liability upon actual knowledge, on the part of the conductor, of the presence of the white passenger in the negro coach, in time to have avoided the assault resulting in the injury.

We are of opinion that the judgment of the Court of Civil Appeals, affirming the judgment of the district court, should be reversed, and the cause remanded for a new trial.

PHILLIPS, C. J. The judgment recommended by the Commission of Appeals is adopted and will be entered as the judgment of the Supreme Court. We approve the holding of the commission on the question discussed.