HINES *v.* MEADOR.

## Opinion delivered October 18, 1920.

1. CARRIERS—VIOLATION OF SEPARATE COACH LAW—LIABILITY.—While violation by a railway company of the separate coach law (Kirby's Digest, § 6622 *et seq.*) does not of itself create a right of action in favor of an injured passenger, yet, if the carrier's servants knowingly permit it, and injury results to a passenger from assault by one of another race wrongfully permitted in the coach, the carrier will not be heard to say it had no reason to anticipate any injury resulting to another passenger, for the enactment of the law itself is tantamount to a warning that injury may result from its violation.

2. CARRIERS—QUESTIONS FOR JURY.—Whether plaintiff provoked an attack upon himself by a passenger of another race, and whether the officers in charge of the train knew of the latter passenger's wrongful presence in the coach, *held* questions for the jury under the evidence.

3. DAMAGES—PERSONAL INJURIES.—A verdict for $2,500 for a severe cut on the face, incapacitating plaintiff from work for three or four months and leaving a permanent scar on his face, *held* not excessive.

Appeal from Pulaski Circuit Court, Third Division; *G. W. Hendricks,* Judge; affirmed.

*E. B. Kinsworthy* and *R. E. Wiley,* for appellant.

1. The court should have directed a verdict for defendant. The court's instructions made the carrier an absolute insurer of passengers against injury by any act of a fellow passenger riding in a coach assigned to another race, if the carrier's employees knew, or by ordinary care could have known, that such passenger was riding in the wrong coach. The separate coach law was not intended to fix any such absolute liability upon the carrier. It is a police regulation merely, and there is no provision in it for the recovery of damages in favor of the passenger, as there was no evidence to support a finding that the carrier's employees had any reason to anticipate a difficulty, or opportunity, after it started, to protect the plaintiff, and, second, because the direct and proximate cause of the injury was plaintiff's own act in undertaking to police the train. He was not the train

policeman, and it was the conductor's duty to see that passengers were protected, 87 Ark. 576-9; 120 *Id.* 54-9; 99 *Id.* 415; 111 *Id.* 288. See, also, 8 A. & E. Ann. Cases 222; 32 S. W. 742; 135 *Id.* 266-398; 117 *Id.* 1020.

2. The verdict was excessive, as no permanent injury was proved.

*Emerson, Donham & Shepherd,* for appellee.

Appellee's right to recover is based principally, though not absolutely, upon the separate coach law. Kirby's Digest, §§ 6622-4-7. And where a carrier knowingly permits a passenger to ride in a coach set apart for another race and by reason thereof another passenger is assaulted and injured, the carrier is liable, whether it knew of the assault of not. 96 Ark. 316; 125 *Id.* 391; 32 S. W. 742; 42 *Id.* 349; 44 *Id.* 103; 96 *Id.* 898; 135 *Id.* 266; 222 *Id.* 22; 147 *Id.* 411.

The appellant was negligent in failing to assign passengers to the coaches set apart to them under our law, according to race, and in failing to eject the negro when his presence was discovered, and the verdict is not excessive, as it is fully sustained by the evidence.

McCulloch, C. J. Appellee sues for damages resulting from personal injuries alleged to have been sustained on account of being assaulted by a fellow passenger while he was riding on a train. The jury awarded damages in the sum of $2,500, and the Director General has appealed.

Appellee's injuries occurred on November 3, 1918, while he was riding on a passenger train running between Little Rock and Camp Pike. It was a train which left the Union Station at Little Rock early in the morning before daylight, and was operated principally for the convenience of mechanics and other laboring men who were engaged in construction work at Camp Pike, and they traveled in large numbers on that train. There were fifteen coaches in the train, the front five being set apart for negro passengers and the others for white passengers, the rule governing the embarkation of pas-

sengers being that negroes should load from the front
and white passengers from the rear.

Appellee is a white man and was at work as a car-
penter at Camp Pike. He boarded the train at the
Union Station at Little Rock and went into one of the
coaches set apart for white passengers, and he took pos-
session of a seat in the coach just behind a seat occupied
by two negroes. The coach was not completely filled at that
time, but it was filled up by other white passengers when
the train stopped at the Argenta station. After the train
moved out from the Argenta station appellee reached
over and took hold of one of the negroes by the right arm
or sleeve and said, "Lad, go into the coach ahead; this
is the white coach." The negro replied, "I came in here
first," and then appellee retorted, "We need the room
in here, and there is plenty of room ahead." Thereupon
the negro struck at appellee with a knife and cut through
his coat sleeve and into his arm, inflicting a wound which
left a scar, but which was not serious. The negro fled
from the coach immediately after cutting appellee, and
the incident created a commotion among the passengers.
Appellee followed the negro out to the front platform,
calling out, "Stop that negro! he has a knife!" and just
as appellee reached the door of the coach the negro, who
had gotten out on the platform, turned on appellee and
cut him with the knife, this time striking him in the right
temple and cutting downward the full length of the side
of his face. The flesh was cut through to the bone, and
two of the arteries were cut, and the wound was a very
serious one. The negro then made his escape, and the
train was stopped, and appellee was taken therefrom
and sent to a hospital. He was incapacitated from work
for three or four months and suffered great pain and in-
convenience and had not recovered from the effects of
the wound at the time of the trial. The evidence tended
to show that it would be a good while before there would
be complete recovery from the injury, and that there was
plainly observable a scar which would be left permanently
the full length of appellee's face.

There is a conflict in the testimony as to what passed between appellee and the negro, so far as relates to appellee's conduct. The testimony adduced by appellant tended to show that appellee attempted to eject the negro from the coach, and that, after he was cut the first time, he followed the negro to the platform in an effort to engage in a fight with him. In other words, there was testimony adduced which would have warranted the finding that appellee provoked the assault by his own conduct, but appellee's own testimony was sufficient to warrant the finding that his conduct, in requesting the negro to leave the coach and in following the negro to the platform for the purpose of causing his arrest, was not sufficient to provoke the assault.

The court gave, over appellant's objection, the following instruction, which is assigned as error:

"You are instructed that the law requires that all railway companies carrying passengers in this State shall provide separate accommodations for the white and African races by providing two or more passenger coaches for each passenger train or by carrying one partition car, one end of which may be used by white passengers and the other end by passengers of the African race, and that the officers of such passenger trains are required to assign each passenger or person to the coach or compartment used for the race to which such passenger belongs. And if you find from the evidence in this case that plaintiff became a passenger upon one of the defendant's trains about the date mentioned in the complaint, and was assigned to or was riding in the coach or compartment provided for white passengers upon said train and that defendant's officers in charge of said train knowingly permitted a negro passenger to enter said compartment and ride therein, or by the exercise of ordinary care and diligence could have known that said negro passenger was riding in said compartment among white passengers, and made no effort to expel him therefrom, and that said negro passenger, while riding therein,

made an assault upon plaintiff and thereby injured him, then you will find for plaintiff, unless you further find that plaintiff, by his own wrongful act, provoked the assault, and but for such act or conduct on his part he would not have been assaulted.''

The court also refused to give an instruction at the request of appellant, telling the jury that ''a carrier is not liable for damages caused to a passenger by the assault of another passenger unless the carrier's employees had knowledge, or in the exercise of due degree of care should have had knowledge, that the assault was about to occur; or, unless, after the trouble started, they have reasonable opportunity to prevent the injury and fail to do so.''

The rulings of the court in giving the first instruction and refusing to give the one requested by appellant are each assigned as error. The argument of learned counsel for appellant in support of these assignments of error is, in substance, that a violation of the statute of this State requiring the separation of white and colored passengers in a train (Kirby's Digest, section 6622, *et seq.*) does not create a cause of action in favor of an injured passenger, and that liability in this case is dependent on the question whether or not the servants of the company exercised proper degree of care to prevent the injury after they knew or had reason to anticipate that injury might result. Counsel cite two decisions of this court which they argue support their contention. *St. L. & S. F. R. Co.* v. *Petties,* 99 Ark. 415; *C., R. I. & P. Ry. Co.* v. *Allison,* 120 Ark. 54. Neither of these cases support the contention. In the Petties case the alleged injury resulted from the failure of a carrier to furnish a seat to a female passenger who was riding in a coach assigned to passengers of her race, but which was crowded with passengers of the other race and the defense was that on account of an unanticipated emergency there was not sufficient seating capacity in the train for all passengers. We held that the carrier was not liable for failure to furnish a seat to the passengers, if, on ac-

count of the unusual and unanticipated emergency, accommodations could not be furnished for all of the passengers, even though passengers of another race were allowed to go into the coach properly occupied by the plaintiff and took up all the seats.

The Allison case was one where a passenger sued for being compelled to ride in a coach with passengers of another race. We said in the opinion that there might be a violation of this statute without necessarily conferring a cause of action for damages in favor of a passenger, and we reversed the case because of improper instructions and because the award of damages was excessive, but the opinion clearly recognized liability by the carrier to a passenger on account of humiliation resulting on account of being compelled to ride in a coach with passengers of the other race. The decision in that case seems to support, to some extent, the ruling of the trial court in the present case. At any rate, we are of the opinion that neither of these cases support the contention made by learned counsel for appellant, that there is no liability unless the carrier knew or had reason to anticipate the injury inflicted upon a passenger riding in a coach assigned to his race by another passenger who was wrongfully permitted to ride in that coach.

Our statute is almost identical with the one on that subject in force in the State of Kentucky, and the instructions given by the court in this case are in accord with the rules of law announced by the Court of Appeals of Kentucky on that subject.

The first case on that subject decided by the Kentucky court was *Quinn* v. *Louisville & N. R. Co.*, 98 Ky. 231, 32 S. W. 742. In that case a white passenger went into a coach assigned to negro passengers, and while there was guilty of conduct which resulted in injury to a negro woman who was in the coach. The trial court in that case applied the rule contended for by learned counsel for appellant in the present case, but the Court of Appeals in reversing the judgment in favor of the carrier said: "It is contended by counsel, and upon this idea

the instruction below was framed, that if the conductor was otherwise vigilant, and was ignorant of the passenger's condition and treatment of the colored passenger, no recovery could be had. * * * While the mere presence of the intruder into the coach for colored persons, with the knowledge of the conductor, would not give to the occupants a cause of action against the corporation, we can not concur with counsel or the court below that the separate coach law has no application to the facts of this case. It is not necessary, in order to permit a recovery, to show that the conductor knew of this bad treatment of the colored passenger, or from his condition had the right to anticipate it was the purpose of the intruder to produce trouble. He should not be allowed to enter the car, or to remain there after his presence is discovered. In the transportation of passengers prior to the passage of the separate coach bill, the frequent disturbances arising between the two races, resulting often in serious injuries being inflicted by the one on the other, and the danger to other passengers, led to the enactment of this law as a police regulation, in order to prevent, as far as possible, these altercations upon railroad trains, and to check the disposition of those of the dominant race to offend and humiliate those who were entitled to the protection of the law. * * * If, and as we shall assume was the case, each one of the passengers had been assigned the coach required by the statute, and the white passenger had left his coach, and gone into the coach with these colored people, without the knowledge of the conductor, while he was attending to his duties in the other cars and had there abused and insulted the appellant, it is plain no action could be maintained against the company; but when the white passenger is assigned to the cars set apart for those of another race, the company will be held responsible for his bad conduct, affecting the rights of other passengers, although the conductor may be ignorant of what is transpiring; and where the conductor, or those managing the train, knows that one is in the wrong car, it is his duty to expel him, and,

by consenting to his remaining, the company becomes responsible for his conduct, so long as he does remain."

The doctrine of that case has been reaffirmed with liberal quotations therefrom in several later decisions of the same court. *Wood* v. *L. & N. R. Co.,* 101 Ky. 703; *L. & N. R. Co.* v. *Renfro,* 142 Ky. 590; *L. & E. R. Co.* v. *Vincent,* 96 S. W. 898.

It is true that the separate coach statute does not of itself create a right of action in favor of an injured passenger. Nevertheless, in testing the question of the carrier's liability, a violation of the statute can not be ignored; and if the servants of the carrier permit a violation of the statute and injury results to a passenger, the unlawful act in permitting such violation of the statute is the proximate cause of the injury, and it is not essential to liability that the servants of the carrier must have had reason to anticipate that injury would result from the contact in the same coach between passengers of different races. When a carrier knowingly suffers a violation of the statute, it is liable for the reason stated by the Kentucky court that, by consenting to the occupancy of the wrong coach by a passenger, it becomes responsible for the conduct of that passenger so long as he wrongfully remains in the coach. In other words, when a carrier permits a passenger to occupy a coach set apart to passengers of another race, it will not be heard to say that it had no reason to anticipate injury to another passenger, for a violation of the law itself is tantamount to warning that injury may result and makes the carrier liable for any injury resulting to another passenger—not as a cause of action based upon the statute, but from the duty of the carrier to its passengers to protect them from harm and inconvenience. We are of the opinion therefore that the instructions were correct.

It is earnestly argued that the evidence was not sufficient to sustain the verdict, and that it shows that appellee provoked the assault himself, and also that it is not shown that the conductor in charge of the train knew of the presence of the negro passenger in the white

coach. There is a conflict in the testimony, as we have already stated, and, viewing the conduct of appellee in the light most favorable to him, it can not be said as a matter of law that he provoked the difficulty and was himself responsible for his own injury. That question was properly submitted to the jury upon the instructions quoted and also another instruction, and the verdict of the jury is conclusive. Appellee had no right to eject the negro passenger himself, for that duty devolved upon those in charge of the train, but his own evidence shows that he did not attempt to eject the negro from the train, but merely called the latter's attention to the fact that he was in the wrong coach, and that the seat occupied by him was needed for other passengers. It was a question for the jury to determine whether this statement was calculated to provoke an assault. The testimony shows that the train auditor ascertained, as he passed through this coach shortly before the assault on appellee, that the negro was wrongfully occupying a seat in that coach, and that he made no effort to get the negro out of the coach. The statute makes it the duty of the "officers of such passenger trains" to assign passengers to the proper coaches and to enforce the provisions of the statute with reference to the separation of the races. It is unnecessary to determine at this time what servants of the carrier in charge of the train fall within the term "officers," for the evidence was sufficient to show that the train auditor discovered the presence of the negro passenger and could have notified the conductor who undoubtedly had authority to enforce the law with respect to separation of races. The jury could have found from the testimony that there was fault on the part of the carrier's servants in permitting the negro to remain in the coach assigned to white passengers where appellee was riding, and, that being true, the carrier was liable for the injury as the assault was not provoked by appellee himself.

The final contention is that the verdict is excessive, but we are of the opinion that such is not the case. Ap-

pellee suffered a very serious and painful wound, which incapacitated him from his work for a considerable length of time and will leave permanently a scar on his face. We can not say that the sum of $2,500 is excessive.

The judgment is therefore affirmed.